OPINION OF THE COURT
Louis B. York, J.
North Presbyterian Church (North Presbyterian), which is sued in this action as "Trustees of the North Presbyterian Church of New York City”, moves for an order of summary judgment dismissing all claims, cross claims and third-party claims asserted against it. Jenny Espinal, the infant plaintiff, and Ricardo Ramos, both individually and doing business as Richard Management Co. (collectively referred to as Richard Management) — who are defendants, third-party plaintiffs and third third-party plaintiffs in this lawsuit — separately oppose North Presbyterian’s motion. The motion forces the court to consider what appears to be a novel legal issue: the liability of the owner of a building which houses a school, after-school or day-care program — in this case, a Head Start program — for lead poisoning when the owner has prior notice of a peeling paint condition. For the reasons discussed below, the court finds an issue of fact regarding North Presbyterian’s liability and thus denies its motion.
This lawsuit involves allegations regarding lead paint poisoning. In her original complaint, dated August 23, 1993, plaintiff alleged that between 1982 and 1988, while she and her mother were tenants of the building located at 570 West 156th Street, she was exposed to lead paint hazards; and that, as a result, she suffers from elevated lead levels. Plaintiff was born on March 12, 1981, and thus was between one and seven years old during the time of her alleged exposure. Originally, she asserted claims against 570 West 156th Street Associates (570 West), King David Management Company (David Management) and Richard Management, all of which allegedly are affiliated with the building as its owners and managing agents and chargeable with maintaining and repairing the building; and against Gerald and Judith Ziering, who are partners in both 570 West and David Management.
Then, in November of 1994, Richard Management initiated a third-party action against North Presbyterian and the North Presbyterian Head Start Child Development Center (Head Start). The third-party complaint alleged that, during part of *862 the time encompassed by the complaint, plaintiff attended the Head Start program at North Presbyterian; that North Presbyterian’s building, which also housed Head Start, contained unsafe levels of lead; and that it was plaintiff’s exposure to lead while at Head Start, rather than any exposure to lead at her dwelling place, which caused her to have elevated lead levels.
Shortly thereafter, plaintiff amended her complaint to include claims against both third-party defendants. In her amended complaint, plaintiff echoes Richard Management’s contention that she was exposed to lead paint while attending Head Start. However, she maintains her assertion that she was exposed to lead at her dwelling place, and states that the exposure at Head Start exacerbated rather than caused her health problems.
North Presbyterian makes three arguments in support of its motion: (1) that it is not required to comply with Administrative Code of the City of New York § 27-2013 or the relevant provisions of the Multiple Dwelling Law, and neither Richard Management nor plaintiff has shown that North Presbyterian had prior notice of the lead condition at the church building; (2) that, even if plaintiff’s allegations are true, plaintiff has not shown that any lead paint problems at North Presbyterian contributed to her lead poisoning condition; and (3) that plaintiff has failed to show proximate cause with respect to North Presbyterian.
I. Notice
Generally, "for a landlord to be held liable for injuries resulting from a defective condition upon the premises, the plaintiff must establish that the landlord had actual or constructive notice of the condition for such a period of time that, in the exercise of reasonable care, it should have been corrected”. (Juarez v Wavecrest Mgt. Team, 88 NY2d 628, 646 [1996].) However, as the Court of Appeals recently stated, various provisions of the Multiple Dwelling Law partially abrogate the common law with respect to multiple dwellings. In particular, Local Laws, 1982, No. 1 of the City of New York § 1 (Local Law 1), codified at Administrative Code § 27-2013 (h) (2), "establishes a presumption that, in any building erected prior to 1960, peeling paint in a dwelling unit occupied by a child six years of age or under comprises a hazardous lead condition”. (Juarez v Wavecrest Mgt. Team, 88 NY2d, at 647.) Paragraph (1) of subdivision (h) establishes the owner’s duty to remove paint or *863 similar surfacecoating material if the lead level exceeds 0.5%, of metallic lead or has a reading of 0.7 milligrams of lead per square centimeter or greater. (See, supra, at 641-642.) Read together, these provisions give the landlord an implicit right of entry to correct hazardous lead conditions and sufficient control to sustain a finding of liability. (Supra, at 643.) Thus, if there is a peeling paint condition in an apartment inhabited by a child of six or under in a building constructed prior to 1960, there is a rebuttable presumption of liability against the landlord that the landlord can only rebut by showing that " 'a lead paint hazard existed despite his diligent and reasonable efforts to prevent it’ ”. (Supra, at 644 [citation omitted].)
North Presbyterian emphasizes that the principles enunciated in Juarez (supra) only apply to a landlord’s liability for lead paint conditions in residential dwellings. Therefore, it claims, it can only be chargeable with common-law negligence. According to North Presbyterian, there is no evidence that it had any notice there was a lead paint condition in the building until late May of 1986, when the Department of Health issued a notice of lead paint violations for certain parts of the building. It also asserts that plaintiff was in the Head Start program during 1984 and 1985, and that she remained enrolled until June of 1986 at the latest. It further alleges that this is the first notice it has received concerning any problem in classroom number two, plaintiff’s classroom throughout her time in the Head Start program. Because plaintiff cannot show that it had either actual or constructive notice of the lead paint problem prior to the May 1986 violation notice, North Presbyterian concludes, it cannot be held liable for plaintiff’s lead paint exposure and all claims against it should be dismissed.
Plaintiff and Richard Management both argue that, at the very least, there is an issue of fact regarding whether North Presbyterian had prior notice of the lead paint problem in its building. Both parties refer to the 1986 notice, which they state North Presbyterian actually received in an April 1, 1986 citation from the Department of Health. That citation listed violations including (1) peeling paint, and (2) dust and dirt accumulating in classroom number two. Plaintiff also annexes a copy of a May 5, 1977 report from the Bureau of Sanitary Inspections of the Department of Health stating that, among other things, there was peeling paint in classroom number one and in the cellar kitchen, and that there were holes in the kitchen ceiling above the stove. Together, these parties assert, this raises an issue of fact as to whether North Presbyterian is chargeable with constructive notice of the lead paint condition.
*864 North Presbyterian is correct that Juarez (supra) is not directly controlling in this instance. As already explained, the Court of Appeals based its decision on provisions of Local Law 1 that place duties only on the owners of multiple dwelling units. Nonetheless, this court believes that a standard higher than common-law negligence applies here. Courts have repeatedly held that schools are subject to a higher standard of care. Instead, they must exert " ' "the same [duty] of care and supervision over the pupils under [their] control as a reasonably prudent parent would exercise under the same circumstances.” ’ ” (Mirand v City of New York, 190 AD2d 282, 287-288 [1st Dept 1993] [citations omitted], affd 84 NY2d 44 [1994].) A school owes a special duty to its students because, by taking compulsory custody over them, it temporarily deprives them of the protection of their parents and guardians. (Supra, at 288.)
At least one court has extended this standard of care to preschool programs. (Enright v Busy Bee Playschool, 164 Misc 2d 415 [Sup Ct, Rockland County 1995].) The court in Enright acknowledged that the less demanding standard of ordinary reasonable care applies with respect to wholly voluntary extracurricular activities sponsored by a school (supra, at 416; see, Barretto v City of New York, 229 AD2d 214, 218 [1st Dept 1997], lv denied 90 NY2d 805 [1997]). Although the preschool programs are not statutorily mandated, "they have come into being in response to the needs of working parents and the recognized socialization needs of very young children. Parents would clearly not expect that the care to be taken of such young children would be less than that afforded by a reasonably prudent parent.” (Enright v Busy Bee Playschool, 164 Misc 2d, at 416.) Thus, the court determined that the lesser duty of care owed to older children participating in extracurricular sports did not apply to preschoolers, "the most vulnerable members of our society” (at 416), and held that the higher standard of care applied. For all the reasons expressed in Enright, this court adopts its holding in the context of Head Start programs, which play a crucial role "in the effective delivery of comprehensive health, educational, nutritional, social, and other services to economically disadvantaged children and their families” (42 USC § 9831 [a]).
As the landlord of the church that houses the relevant Head Start program, North Presbyterian concedes that it "retained sufficient control over * * * the area where the * * * plaintiff remained while in the Head Start Program, so as to impose liability on it for a defective condition of which it had notice and *865 which was a proximate cause of the plaintiff s injuries.” (Mem of law in support of motion for summary judgment, at 3.) Thus, the landlord here must ensure that no defective conditions exist which harm the safety of the young children participating in the Head Start program. Furthermore, as in Juarez, the landlord here is "vest[ed] * * * with sufficient control over [the] leased premises to sustain liability”. (Supra, 88 NY2d, at 643.) For these reasons, the court applies the reasonably prudent parent standard to North Presbyterian.
Applying this standard, it is clear that plaintiff and Richard Management have raised an issue of fact concerning North Presbyterian’s negligence. As the Juarez Court noted, lead-based paint poses a serious health hazard to children. "High blood lead levels can produce brain damage, coma or death, and even relatively low levels can lead to significant nervous system damage”. (Supra, at 641.) It is as a result of this danger that, since 1960, landlords have been prohibited from using lead-based paint on interior building surfaces and that, since 1962, legislation has existed governing the abatement of lead paint in multiple dwellings where young children reside. (Supra.)
For the same reasons, the existence of lead-based paint in nurseries, kindergartens and day-care centers is also hazardous to children. Indeed, because buildings containing kindergartens, nurseries and day-care centers invariably house children, the landlords of these buildings should know that any lead paint problems are extremely dangerous. Given this, a reasonably prudent parent would abate any lead-based paint problems over which it had control. Because of the pervasiveness of the lead paint problem prior to 1960, if given notice of a peeling paint condition in a building containing his or her child and erected before 1960, a reasonably prudent parent would investigate to determine whether there is a lead paint condition. This is true even though laws were not in place regarding lead paint abatement in kindergartens and day-care centers,* as the issues surrounding lead paint poisoning had been sufficiently publicized to put the landlords of these establishments on notice.
Therefore, this court holds that, in a building constructed prior to 1960 that houses a Head Start program, notice of a peeling paint condition in an area used by the children creates *866 a rebuttable presumption that the landlord had notice of a lead paint hazard. Based on this conclusion, I find that the 1977 notice of a peeling paint condition in classroom number one precludes a finding of summary judgment in favor of North Presbyterian. This is true even though the 1977 notice applied to classroom number one rather than classroom number two. For, the evidence of problems in a different classroom is relevant in considering the reasonableness of North Presbyterian’s conduct. (Cf., Smith v Fields, NYLJ, June 12, 1997, at 28, col 6 [Sup Ct, NY County] [evidence of violations in other dwelling units can be considered in determining reasonableness of landlord’s action with respect to unit at issue].)
Finally, on this issue, the court notes that no evidence was submitted concerning the age of the building. Even if the building was erected after 1960, summary judgment still would be improper. For, in that case, North Presbyterian would have violated laws prohibiting it from using lead-based paint.
II. Contribution and Proximate Cause
North Presbyterian also argues that plaintiff and Richard Management have failed to raise an issue of fact that the lead paint problems at the church aggravated plaintiff’s lead poisoning condition or that it was the proximate cause of plaintiff’s lead poisoning. These arguments have no merit. "Summary judgment is an exercise in issue-finding, not issue-determination, and may not be granted when material and triable issues of fact are presented”. (Color by Pergament v Pergament, 241 AD2d 418, 420 [1st Dept 1997].) Indeed, "even where there is any doubt as to the existence of triable issues of fact”, a court should deny summary judgment. (Vos v City of New York, 234 AD2d 70 [1st Dept 1996].)
Initially, North Presbyterian cannot prevail on this motion based on its argument that plaintiff has failed to show that the lead paint problem at Head Start aggravated her condition. As noted earlier, this court finds that the 1986 and 1977 violation reports raise an issue of fact regarding notice. Therefore, North Presbyterian may be chargeable with any exposure for the entire period between 1984 and 1986 during which plaintiff was a participant in the Head Start program. Even if plaintiffs exposure to lead at her residence was more substantial and more sustained than her exposure at the Head Start program, her ultimate injuries still may be greater because of lead paint poisoning at Head Start. Whether the lead paint problems at North Presbyterian worsened plaintiff’s injuries is a jury ques *867 tion. Furthermore, even if North Presbyterian has minimal culpability compared to the other defendants, it still cannot prevail on its motion for summary judgment. (See, e.g., Toscarelli v Purdy, 217 AD2d 815 [3d Dept 1995] [affirming award as against parties found 1% liable]; Felice v Karabag, 214 AD2d 642 [2d Dept 1995] [affirming award].)
Moreover, for similar reasons, North Presbyterian is not entitled to a finding that, as a matter of law, plaintiff cannot show proximate cause. Courts are particularly reluctant to grant summary judgment where issues such as proximate cause are involved. Unless there is only one possible conclusion to be drawn from the established facts, the issue of proximate cause should be resolved by a jury. (See, Nowlin v City of New York, 81 NY2d 81, 89 [1993]; Benitez v New York City Bd. of Educ., 73 NY2d 650, 659 [1989].) Here, plaintiff and Richard Management have shown that there was a lead paint problem at North Presbyterian, that plaintiff attended a program at the building and that plaintiff now suffers from elevated blood lead levels. Because these facts raise an issue as to whether plaintiff’s elevated lead levels are at least partially the result of her exposure at North Presbyterian, plaintiff has established a prima facie case. The type of proof North Presbyterian demands from plaintiff at this stage of the litigation should be considered by the fact finder at trial. Because the court will not usurp the fact finder’s role, it must deny the motion.
IV. Conclusion
The court has reviewed the parties’ other arguments and has found them unpersuasive. Therefore, and for the reasons stated above, it is ordered that the motion for summary judgment is denied.

 The provisions cited by plaintiff all relate to lead paint control in dwellings. Those rules the court found, e.g., 24 RCNY 47.44 (relating to lead paint in day-care centers), were not effective during the period at issue in this case.