[685 NYS2d 231]

Monica W. et al., Respondents, v Mario Milevoi et al., Appellants, et al., Defendants. (And a Third-Party Action.)

First Department, February 18, 1999

APPEARANCES OF COUNSEL

*James M. Lane* of counsel (*Brian J. Shoot* on the brief; *Schneider, Kleinick, Weitz, Damashek & Shoot,* attorneys), for respondents.

*Charles T. Glaws* of counsel (*Peter P. Traub, Jr.,* on the brief; *Armienti & Brooks, P. C.,* attorneys), for Mario Milevoi and another, appellants.

*Neil T. Veilleux* of counsel (*Smith Mazure Director Wilkins Young Yagerman & Tarallo, P. C.,* attorneys), for Metropolitan Assistance Corporation, appellant.

## OPINION OF THE COURT

RUBIN, J.

Plaintiff Quintina W. commenced this action on behalf of herself and her twin daughters, Monica and Monique, to recover damages for personal injury sustained by the infant plaintiffs as the result of their ingestion of lead-based paint and their exposure to dust from lead-based products. Exposure is alleged to have occurred during the period from 1987 through 1993 at four separate locations owned by the various defendants, including defendant-appellants. On December 18, 1991, Monique W. was found to have lead present in her blood at a level of 27 mcg/dl. Her twin sister was diagnosed with lead poisoning on December 13, 1991 with a blood level of 81 mcg/dl. An October 1991 statement by Centers for Disease Control and Prevention (CDC) classifies this reading as class V lead poisoning, which constitutes a "medical emergency" requiring immediate medical and environmental management (*Preventing Lead Poisoning in Young Children,* at 3 [4th rev]; *see also, Juarez v Wavecrest Mgt. Team,* 88 NY2d 628, 641 [citing the CDC statement]).

In the course of a deposition that extended over five days and produced a transcript of 815 pages, Quintina W. was asked some 103 questions concerning the nonparty siblings of the infant plaintiffs, to which counsel directed her not to respond. Other questions, which she was also directed not to answer, concerned her general medical history, her total number of pregnancies, including any abortions, and the medical history of the twins' father, including alleged alcohol abuse.

Defendants moved for a further deposition and to require responses to questions concerning the infant plaintiffs' siblings.

Plaintiffs cross-moved for a protective order. Supreme Court granted defendants' motion only to the extent of directing plaintiff mother to respond to questions pertaining to the twins' IQ tests and otherwise granted plaintiffs' cross motion. Supreme Court reasoned, "While the information sought with respect to plaintiffs' siblings' academic backgrounds, IQ's, medical histories and developmental milestones may not be privileged *per se*, the siblings' privacy is entitled to protection absent a showing that the defendants' need for disclosure outweighs the importance of protecting the non-parties' privacy."

On appeal, defendants argue that Supreme Court's interest in protecting the nonparty siblings' privacy does not warrant the categorical denial of further disclosure. They assert that they do not seek "discovery of school records, records concerning any cognitive tests or medical records of non-party siblings." They do, however, seek "to conduct a factual inquiry concerning these areas at the examination before trial of the mother of [the] non-party siblings." They argue that this avenue of inquiry "is both 'material and necessary' to the defense of this action" (CPLR 3101 [a]).

Generally, "a witness may not refuse to answer questions regarding matters of fact, such as those posed in this case, as to whether her children had any physical or congenital problems * * * merely because those topics relate to events that required medical care or advice from a physician" (*Williams v Roosevelt Hosp.*, 66 NY2d 391, 397). However, the relevancy of the information sought must be established before discovery will be permitted to go forward (*supra*). Similarly, nonmedical records of academic and cognitive performance, though not within any privilege, "are not discoverable unless the party seeking their production establishes their relevance and materiality for discovery purposes" (*McGuane v M.C.A., Inc.*, 182 AD2d 1081, 1082), and the same rule logically applies to examination of a witness as to the academic and cognitive ability of nonparties.

The infant plaintiffs, by seeking recovery resulting from their exposure to lead, have necessarily placed their mental and physical conditions in issue and have implicitly waived their privilege against disclosure of their medical records (*Koump v Smith*, 25 NY2d 287, 294; *Kaplowitz v Borden, Inc.*, 189 AD2d 90, 92-93). The same cannot be said of their parents and siblings, who are entitled to protection against the release of confidential medical information. In the absence of waiver, this

material is privileged, and the nonparties' privilege against disclosure, which is personal to them (*Dillenbeck v Hess*, 73 NY2d 278, 289; *Prink v Rockefeller Ctr.*, 48 NY2d 309, 314), cannot be defeated by defendants' assertion that it is material and necessary to their defense (*Muniz v Preferred Assocs.*, 189 AD2d 738, 739, citing *Sibley v Hayes 73 Corp.*, 126 AD2d 629, 630). As the Court of Appeals noted in *Dillenbeck v Hess* (*supra*, at 289): "it is inherent in the very nature of an evidentiary privilege that it presents an obstacle to discovery and it is precisely in those situations where confidential information is sought in advancing a legal claim that such privilege is intended to operate. Were we to carve out an exception to the privilege whenever it inhibited the fact-finding process, it would quickly become eviscerated."

It is defendants' position that information regarding the siblings' developmental and academic histories is not privileged and may lead to the discovery of admissible evidence relevant to whether the infant plaintiffs' condition is the result of a genetic disorder or some environmental factor other than lead (*see, Williams v Roosevelt Hosp.*, 66 NY2d 391, *supra*; *Anderson v Seigel*, 255 AD2d 409; *Davis v Elandem Realty Co.*, 226 AD2d 419). However, defendants' discovery demand is overbroad, and the relevance of the requested information to any claim or defense in the action has not been established (*Bycomp, Inc. v New York Racing Assn.*, 126 AD2d 815). Defendants have presented no affidavit by any expert to demonstrate that the extent to which the adverse effects of lead exposure contributed to the mental and physical condition of the infant plaintiffs cannot be ascertained by reference to objective clinical criteria and expert testimony. Nor have defendants shown how the information sought to be elicited at an examination before trial of the adult plaintiff pertains to any disability or developmental impairment experienced by the infant plaintiffs.

The mental condition of the nonparty siblings is not at issue. Defendants' intimation that genetic and other environmental factors may have contributed to the infant plaintiffs' impairment is speculative, at best, and does not serve to introduce the issue into the case. That a sibling suffers from a cognitive deficit demonstrates nothing unless the possibility that the sibling was also exposed to lead can be ruled out as a factor contributing to the condition. This would require exploration into the sibling's medical history which, absent waiver by plaintiff mother, is foreclosed. Finally, even assuming defen-

dants could establish, by utilizing unprivileged material, that a mentally impaired sibling was not exposed to lead, defendants would still have to establish that any such impairment was not the result of genetic variation or some external factor having no bearing on the infant plaintiffs' condition. Again, exploration of the medical histories of the infant plaintiffs' parents and siblings is implicated.

As noted by this Court in *Wyda v Makita Elec. Works* (162 AD2d 133), the broad discretion extended to Supreme Court to supervise disclosure (*Nitz v Prudential-Bache Sec.*, 102 AD2d 914, 915) also extends to the Appellate Division (*Phoenix Mut. Life Ins. Co. v Conway*, 11 NY2d 367, 370; *Krich v Wall Indus.*, 118 AD2d 627, 628), and it is not necessary that plaintiffs demonstrate an abuse of discretion to warrant reversal of the discovery order under review (*Phoenix Mut. Life Ins. Co. v Conway*, 11 NY2d 367, 370, *supra*). Defendants have not established that the line of inquiry they seek to pursue will avail them of any useful information relevant to the cause of the infant plaintiffs' impairment (*see, Osorio v Olga Taxi Co.*, 23 AD2d 730 [no need for examination before trial to elicit facts that cannot be proven at trial]). Therefore, this Court declines to permit further examination in this area.

Accordingly, the order of the Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered on or about April 28, 1998, which, insofar as appealed from, denied defendants-appellants' motion to compel the adult plaintiff, the infant plaintiffs' mother, to disclose certain information concerning the infant plaintiffs' nonparty siblings except to the extent of directing her to respond to questions pertaining to the infants' IQ tests, and granted plaintiffs' cross motion for a protective order, should be modified, on the law, the facts and in the exercise of discretion, to the extent of denying defendants-appellants' motion in the entirety and, except as so modified, affirmed, without costs.

ROSENBERGER, J. P., LERNER and MAZZARELLI, JJ., concur.

Order, Supreme Court, New York County, entered on or about April 28, 1998, modified, on the law, the facts and in the exercise of discretion, to the extent of denying defendants-appellants' motion to compel in the entirety and, except as so modified, affirmed, without costs.