OPINION OF THE COURT
Joseph R. Cannizzaro, J.
Kelly Van Epps commenced this representative action seeking recovery for personal injuries sustained by her children Daniel and Crystal as a result of lead poisoning that allegedly occurred at some point during the course of their residence in homes owned by defendants Baggetta and Lane, and in which the defendant, County of Albany, had conducted lead inspections and lead abatements. Defendant County of Albany (hereinafter the County) moves for an order requiring plaintiffs to supplement certain responses contained in their bill of *161 particulars and to respond to other discovery demands. Specifically, the County requests an order requiring plaintiffs to:
“(a) particularize and identify the dates of the alleged exposure to lead paint;
“(b) particularize and identify the dates on which conditions from lead exposure first manifested themselves;
“(c) particularize and identify the specific statutes and regulations alleged to have been violated and the manner in which it is alleged they were violated;
“(d) particularize the claim for future economic loss;
“(e) provide authorizations permitting defendants to obtain copies of medical, educational and employment records of the infant plaintiffs’ parents and siblings;
“(f) provide copies of the infant plaintiffs’ standardized test scores;
“(g) provide copies of all rent receipts, canceled checks, leases, or correspondence or other documents that refer to the terms or conditions of plaintiffs’ occupancy of 26 Clifton Street, Waterford, New York; and
“(h) provide copies of all written notices by plaintiffs or their agents or representatives which purportedly notified defendants Lane and Baggetta of any and all defects in their apartments.”
In addition, the County also moves for an order that requires:
“(i) Kelly Van Epps to submit to an I.Q. test;
“(j) Kelly Van Epps to appear for further testimony and respond to questioning regarding the medical, educational, and developmental history of her other daughter and the infant plaintiffs’ sibling, Christina Van Epps;
“(k) an in camera review of the plaintiffs’ file from the Albany County Department of Social Services so the Court can determine whether the file contains reference to or copies of any prior medical and treatment records of the infant plaintiffs’ parents and siblings; and
“(1) an in camera review of the plaintiffs’ file from the Albany County Department of Health regarding Christina Van Epps’ medical care and treatment so the Court can determine the existence of relevant discovery.”
Defendants Baggetta and Lane join in the County’s motion. Plaintiffs cross-move for a protective order.
The County has repeatedly requested that plaintiffs supplement their bill of particulars on grounds that certain responses *162 are nonresponsive or overly broad. Throughout 1998 and 1999, both the County and the plaintiffs have made several documented good-faith efforts, with little success, to resolve issues concerning the plaintiffs’ bill of particulars, and plaintiffs’ response, or lack thereof, to the County’s other discovery demands. On November 9, 1999, the defendants deposed Kelly Van Epps. During the deposition, over the objections of the defendants, plaintiffs’ counsel refused to permit the defendants to question Kelly Van Epps concerning the birth, education, medical history, and development of Christina Van Epps. Christina had lived with the plaintiffs at all times relevant to this action, but is not a plaintiff in this action. Having reached a stalemate as to the issues concerning the plaintiffs’ bill of particulars and other discovery, the defendants now seek a resolution of these issues in addition to a determination as to whether defendants may question Kelly Van Epps about her daughter, Christina. •
Motion items (a) through (d) concern plaintiffs’ bill of particulars’ responses that defendants would like supplemented. It is well settled that the purpose of a bill of particulars is to amplify the pleadings, limit the proof, and prevent surprise at trial. (See, Felock v Albany Med. Ctr. Hosp., 258 AD2d 772 [3d Dept 1999].) Where a party’s bill of particulars sufficiently apprises an adversary of the allegations against him or her to enable the adversary to prepare a defense, the purpose of the bill of particulars is achieved. (See, e.g., Harrell v County of Nassau, 227 AD2d 590 [2d Dept 1996]; Eisenstein v Gill, 125 AD2d 441 [2d Dept 1986].) Upon review of the plaintiffs’ verified bill of particulars dated April 15, 1998, and plaintiffs’ supplementing correspondence, the court finds that plaintiffs’ responses in regard to items (a) through (d) are sufficiently particular and no further responses are necessary.
Motion items (f), (g) and (h) concern specific discovery demands that defendants assert plaintiffs have yet to respond to. The court notes that plaintiffs have not at any time objected to providing the requested discovery. Moreover, there are no grounds asserted that would excuse the plaintiffs from providing the requested discovery. Plaintiffs, therefore, are directed to provide complete and specific responses to these items within 30 days of the date of this order. Responses that refer to voluminous documents that may have already been provided to defendants will not be sufficient. Rather, plaintiffs must provide defendants with the specific information that is requested in a form that can be readily identified. Where any *163 of such information does not exist, then plaintiffs are required to provide defendants with an affidavit to this effect within the prescribed 30 days.
Defendants’ remaining motion items are governed by several different factors, the first of which is CPLR 3120 (b). CPLR 3120 (b) states, in relevant part, as follows: “(b) As against non-party. A person not a party may be directed by order to do whatever a party may be directed to do under subdivision (a). The motion for such order shall be on notice to all adverse parties; the non-party shall be served with the notice of motion in the same manner as a summons. The order shall contain, in addition to such specifications as the notice is required to contain under paragraph two of subdivision (a), provision for the defraying of the expenses of the non-party.”
On a motion to compel, in order for the court to require a nonparty to produce documents or things for inspection, testing, copying or photographing, the court must first have jurisdiction over the nonparty. (See, Blake v LP 591 Ocean Realty, 237 AD2d 554 [2d Dept 1997].) In order for jurisdiction to be obtained, the moving party must comply with the mandate of CPLR 3120 (b) that requires that the nonparty “be served with the notice of motion in the same manner as a summons.” Without such service, the court lacks jurisdiction and cannot entertain the motion for the relief requested. (See, Weiss v Meiselman, 155 AD2d 533 [2d Dept 1989]; Ruiz v City of New York, 125 AD2d 661 [2d Dept 1986].)
In the instant case, it is undisputed that neither the infant plaintiffs’ parents nor their sibling, Christina, are parties to this action. However, there is nothing in the record that reflects that they were properly served with the instant notices of motion in the same manner as a summons. Defendants, therefore, have failed to meet the jurisdictional requirements of CPLR 3120 for seeking discovery and inspection against nonparties. (See, Blake v LP 591 Ocean Realty, supra.) The court, thus, cannot entertain defendants’ motion with respect to items (e), (k) and (1).
Even if defendants had properly served the infant plaintiffs’ parents and sibling, however, the court would not be inclined to grant the relief requested in motion items (e), (k) and (1). Nor would the court be inclined to grant the relief requested in motion items (i) and (j). The court finds that it would be contrary to established principles of discovery to compel such disclosures.
There is a growing trend amongst the defense bar in lead injury cases to seek intelligence quotient (I.Q.) examinations *164 and the medical, educational and employment records of non-parties, such as parents and siblings, in order to dispute causation or to limit damages. (See, Viner Samborn, Blame It On The Bloodline, Discovery of Nonparties’ Medical and Psychiatric Records is Latest Defense Tactic in Disputing Causation, 85 ABA J 28 [1999]; Wriggins, Genetics, IQ, Determinism, And Torts: The Example Of Discovery In Lead Exposure Litigation, 77 BU L Rev 1025 [1997].) Typically, as in the instant case, the defense theorizes that the information requested could lead to the discovery of admissible evidence relevant to whether a plaintiffs cognitive, behavioral and developmental deficits are the result of genetic inheritance, biological, or some environmental factor other than lead. (Ibid.; see also, Eagle and Biblow, Courts In Lead Cases Allow Discovery Of Siblings’ Academic And I.Q. Records, NYLJ, Apr. 12, 1999, at 1, col 1.) However, causation and damages inquiries in personal injury cases have been traditionally and historically centered on the plaintiff. Discovery inquiries are accordingly directed almost exclusively at the plaintiff, because the plaintiffs condition is at issue. (See, Wriggins, op. cit., at 1030.) Ordering the production of nonparties’ medical, educational or employment records, or ordering a nonparty to submit to an I.Q. test, is a significant departure from plaintiff-centered discovery. (Id., at 1058.)
Furthermore, although there shall be full disclosure of all matter material and necessary in the prosecution or defense of an action (see, CPLR 3101 [a]) and the trial court possesses wide discretion in deciding whether the information sought is material and necessary (see, Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406-407 [1968]), CPLR 3101 (b) mandates that “[u]pon objection by a person entitled to assert the privilege, privileged matter shall not be obtainable.” In addition, if a party seeking disclosure from a nonparty fails to establish the relevance of the information sought, disclosure must be denied. (McGuane v M.C.A., Inc., 182 AD2d 1081 [4th Dept 1992].) Establishing relevance involves a balancing of the interests of the parties and public policy. Discovery requests that tend to broaden the scope of litigation and intrude upon rights to privacy should not be permitted unless there is a showing that the need for disclosure outweighs the importance of protecting nonparties’ privacy. (See, Matter of New York County DES Litig., 168 AD2d 44 [1st Dept 1991]; Washington v Bayley Seton Hosp., Sup Ct, NY County, May 1, 1998, Abdus-Salaam, J., index No. 108272/94; see also, Wriggins, op. cit.)
With these principles in mind, the court turns to the remaining discovery requested herein. It appears that the information *165 requested falls into two categories: privileged and nonprivileged material. The court will address the privileged information requested first.
Motion items (e), (j), (k) and (1) seek medical records and information concerning the infant plaintiffs’ parents and sibling, Christina, from sources including the Department of Health and the Department of Social Services, in addition to questioning Kelly Van Epps concerning Christina’s medical history. The First Department spoke to this issue in Monica W. v Milevoi (252 AD2d 260 [1st Dept 1999]) where a mother commenced an action on behalf of herself and her twin daughters to recover damages for personal injuries sustained by the twins as the result of their ingestion of lead paint. In the course of her deposition, the mother was asked some 103 questions concerning the nonparty siblings of the twins, to which counsel directed her not to respond. The mother was also directed not to answer questions concerning her own general medical history and the medical history of the twins’ father. Defendants moved for a further deposition and to require responses to questions concerning the twins’ siblings. Plaintiffs cross-moved for a protective order.
The trial court granted plaintiffs’ motion, finding that while the siblings’ academic backgrounds, I.Q.s, medical histories and developmental milestones may not be privileged per se, their privacy was entitled to protection absent a showing that the defendants’ need for disclosure outweighed the importance of protecting the nonparties’ privacy. On appeal, the defendants argued that they were not seeking discovery of school records, records concerning any cognitive tests or medical records of the nonparty siblings, but rather only to conduct a factual inquiry concerning these areas at the deposition of the mother. The defendants argued that this avenue of inquiry was both material and necessary to the defense of the action.
The First Department noted at the outset that in terms of discovery it made no difference whether defendants sought information from records or from the examination of a witness. The same rules applied. The Court then went on to discuss the disclosure of medical information. The Court stated that: “The infant plaintiffs, by seeking recovery resulting from their exposure to lead, have necessarily placed their mental and physical conditions in issue and have implicitly waived their privilege against disclosure of their medical records * * * The same cannot be said of their parents and siblings, who are entitled to protection against the release of confidential medi *166 cal information. In the absence of waiver, this material is privileged, and the non-parties’ privilege against disclosure, which is personal to them * * * cannot be defeated by defendants’ assertions that it is material and necessary to their defense [citations omitted].” (Monica W. v Milevoi, supra, at 262-263.)
Citing the Court of Appeals, the Court went on to state that “ ‘it is inherent in the very nature of an evidentiary privilege that it presents an obstacle to discovery and it is precisely in those situations where confidential information is sought in advancing a legal claim that such privilege is intended to operate. Were we to carve out an exception to the privilege whenever it inhibited the fact-finding process, it would quickly become eviscerated.’ ” (Monica W. v Milevoi, supra, at 263, citing Dillenbeck v Hess, 73 NY2d 278, 289 [1989].)
Prior to Monica W. v Milevoi (supra), the First Department addressed the issue of nonparty disclosure of medical records and information in tort litigation on a much larger scale. (See, Matter of New York County DES Litig., supra.) In the DES litigation, 800 plaintiffs sought damages against various drug companies for injuries allegedly sustained due to their mothers’ use of DES before their births. The drug companies sought authorizations to obtain hospital and medical records of the plaintiffs’ mothers, fathers, siblings and other family members on grounds that the medical information was necessary to show that the claimed injuries were not the result of in útero exposure to DES, but rather the product of a genetic or hereditary origin. The First Department held that the plaintiffs’ waiver of their own doctor-patient privileges did not constitute a waiver of their relatives’ privileges and, therefore, the records were not discoverable. The Court stated that: “The mere fact that a relative, distant or near in terms of kinship, has commenced a medical malpractice action alleging a birth defect should not subject all her relatives to the ‘long arm’ reach of the law authorizing their medical histories opened to all.” (Matter of New York County DES Litig., supra, at 47.)
The Court went on to note that the advancements of science and technology “threaten[ ] our most personal of citadels, privacy, to an extent never contemplated” (supra, at 48), and then stated that: “The privacy interests of the non-party relatives of the DES plaintiffs are certainly deserving of protection since the broad discovery sought herein would necessarily (and, indeed, is intended to) invade ‘the protected “zone of privacy” ’ that encompasses the avoidance of ‘disclosure of personal matter.’ ” (Matter of New York County DES Litig., supra, at 48.)
*167 In the instant case, neither the infant plaintiffs’ parents nor their sibling are parties to the action or have placed their mental or physical condition at issue. Thus, there is no implicit waiver of any privilege concerning the medical records or medical information sought. (See, Roman v Turner Colours, 255 AD2d 571 [2d Dept 1998]; Muniz v Preferred Assocs., 189 AD2d 738 [1st Dept 1993].) Moreover, the court does not find that there was an explicit waiver of privilege as to any nonparty. (See, Roman v Turner Colours, supra; Matter of New York County DES Litig., supra; Scalone v Phelps Mem. Hosp. Ctr., 184 AD2d 65, 69-70 [2d Dept 1992].) It is clear, therefore, that the defendants are not entitled to any medical records or information concerning the infant plaintiffs’ parents or their sibling, Christina, from whatever source. Accordingly, the defendants’ requests for such records and information must be denied. (See, CPLR 4504, 4508.)
The next issue concerns Christina’s educational records. The plaintiffs assert that her records are privileged pursuant to Education Law § 4005 (1) (e) which protects the records of students in special education programs. The defendants have neither disputed that Christina is a special education student nor that Education Law § 4005 (1) (e) applies in this case. In the absence of proof to the contrary, the court finds that Christina’s educational records are also privileged and defendants are not entitled to discover them or to question Kelly Van Epps about Christina’s educational history. (See, Stover v O’Connor, Sup Ct, Albany, County, July 1999, Keegan, J., index No. 4621-95 [where the court denied defendants access to a nonparty sibling’s educational records because the sibling was a special education student whose records were privileged pursuant to Education Law § 4005 (1) (e)].)
Even if Christina’s educational records were not privileged, however, the court finds that her records, as well as her developmental history and the educational and employment records of the infant plaintiffs’ parents, are simply not discoverable. Nor does the court find it appropriate to compel the infant plaintiffs’ mother to submit to an I.Q. test. Although it is established that such records and information are not privileged per se, they are of a confidential and private nature and entitled to protection, and the court finds that the defendants have not demonstrated any need for their disclosure that outweighs the importance of protecting the nonparties’ privacy. (See, e.g., Monica W. v Milevoi, 252 AD2d 260, supra; Andon v 302-304 Mott St. Assocs., 257 AD2d 37 [1st Dept 1999]; Alexan *168 der v Westminster Presbyt. Church, 267 AD2d 1102 [4th Dept 1999]; Washington v Bayley Seton Hosp., Sup Ct, NY County, May 1, 1998, Abdus-Salaam, J., index No. 108272/94, supra.)
In regards to such discovery requests, it appears that the decisions of New York courts in tort cases, including predominately lead injury cases, fall into two distinct categories: those where discovery was permitted over privacy concerns (see, e.g., Anderson v Seigel, 255 AD2d 409 [2d Dept 1998]; Hardy v 81 Saratoga Ave. Realty Corp., Sup Ct, Westchester County, June 8, 1998, Fredman, J., index No. 9262/96; Salkey v Mott, 237 AD2d 504 [2d Dept 1997]; Davis v Elandem Realty Co., 226 AD2d 419 [2d Dept 1996]; Atkins v New York City Hous. Auth., Sup Ct, Kings County, Oct. 29, 1996, Rappaport, J., index No. 15460/95; Wepy v Shen, 175 AD2d 124 [2d Dept 1991]; Baldwin v Franklin Gen. Hosp., 151 AD2d 532 [2d Dept 1989]) and those where discovery was not permitted (see, e.g., Monica W. v Milevoi, supra; Andon v 302-304 Mott St. Assocs., supra; Alexander v Westminster Presbyt. Church, supra; Washington v Bayley Seton Hosp., supra; Espinal v 570 W. 156th Assocs., 174 Misc 2d 860; Muniz v Preferred Assocs., supra; McGuane v M.C.A., Inc., 182 AD2d 1081, supra). There being no controlling determination by the Appellate Division, Third Department, on this issue, this court finds more persuasive the latter group of decisions which adhere to the traditional rules of plaintiff-centered discovery and uphold nonparties’ rights to privacy. In this court’s opinion, the cases that permit such discovery fall short of providing reasonable justification for intruding into the personal matters of nonparties.
For example, in Anderson v Seigel (supra, at 410), the Second Department stated only that the authorizations sought in the case as to the academic records of the infant plaintiffs siblings and her mother, the mother’s employment records, and the I.Q. testing of the mother, “were likely to lead to the discovery of admissible or relevant evidence.” This finding was contrary to the trial court’s demonstration that despite the submission of an expert’s affidavit, the defendants did not cite any specific facts that the information sought was material and relevant. (See, Anderson v Seigel, 175 Misc 2d 609, 614 [Sup Ct, Kings County 1998].)
Of equal insignificance is the Second Department’s decision in Davis v Elandem Realty Co. (supra). There, the Second Department stated only that “[t]he appellant has sufficiently established that the academic records of the infant plaintiffs nonparty siblings are relevant and that their requested *169 disclosure is reasonably calculated to lead to the discovery of material information.” (Supra, at 419.) The Second Department in Salkey v Mott (supra) proves no more enlightening as the Court simply agreed with the trial court’s determination that the academic and employment records of the infant plaintiffs mother and the information to be obtained from having her submit to an I.Q. test are discoverable because they are not privileged. The short order handed down in Atkins v New York City Hous. Auth. (supra) directed the infant plaintiffs mother to submit to an I.Q. test and provide authorizations for the release of her complete academic records, as well as the complete academic records of the infant plaintiffs siblings, without any discussion of grounds whatsoever. Finally, in Hardy v 81 Saratoga Ave. Realty Corp. (supra), the trial court in Westchester County permitted the I.Q. testing of the infant plaintiffs mother because it agreed with the defendant’s unsubstantiated assertion that where there is a claim of loss of cognitive function, the mother’s I.Q. is relevant and necessary.
The Second Department’s earlier decisions in Wepy v Shen (supra) and Baldwin v Franklin Gen. Hosp. (supra), which permitted the disclosure of the academic records of the infant plaintiffs’ siblings in medical malpractice actions, are better substantiated. In both cases, the Court found that the defendants had demonstrated through expert proof and specific facts that there was a possible connection between the neurological problems of the infant plaintiffs and the same neurological problems experienced by their siblings. Under such circumstances, the Court concluded that the relevancy of the records had been demonstrated which could support a defense that the injuries sustained by the infant plaintiffs had a genetic cause.
The key to permitting disclosure obviously turns on the sufficiency of the proof submitted by the party seeking disclosure in demonstrating the relevancy of the records or information sought. The decisions of the Second Department, however, offer little assistance in measuring the sufficiency of a party’s submissions in lead injury cases. In contrast, the First Department, in Monica W. v Milevoi (182 AD2d 1081, supra) and Andon v 302-304 Mott St. Assocs. (257 AD2d 37, supra), offers insightful guidance in this regard. In Milevoi, the Court determined that in order to establish the relevance of information sought from nonparties to any claim or defense, an expert’s affidavit was required that demonstrated “the extent to which the adverse effects of lead exposure contributed to the mental *170 and physical condition of the infant plaintiffs cannot be ascertained by reference to objective clinical criteria and expert testimony.” (Monica W. v Milevoi, supra, at 263.)
In addition, the Court stated that there must be a demonstration of how the information sought pertains to any disability or developmental impairment experienced by the infant plaintiffs. (Monica W. v Milevoi, supra, at 263.) The Court concluded that an “intimation that genetic and other environmental factors may have contributed to the infant plaintiffs’ impairment is speculative, at best, and does not serve to introduce the issue into the case.” (Monica W. v Milevoi, supra, at 263.)*
Due to a complete lack of an expert’s affidavit in Monica W. v Milevoi, the First Department held that the defendants had failed to establish the relevance of the information requested and it was therefore not discoverable. (See, Monica W. v Milevoi, supra, at 264.)
In Andon v 302-304 Mott St. Assocs. (supra), the First Department addressed the issue of whether I.Q. testing of a mother is appropriate where a claim is made that her child suffers from certain mental deficiencies caused by lead paint exposure. In rejecting such intrusive disclosure, the Andón Court determined that there were no specific provisions of the CPLR that provided authority for the relief requested where there was no showing that the mother, even though she was a party, had placed her own mental or physical condition at issue. Armed with an expert’s affidavit, the defendants contended that there is a correlation between a mother’s I.Q. and a child’s intelligence and that the mother’s I.Q. is probative on the issue of whether the infant plaintiff’s deficits are due entirely to exposure to lead paint or whether they are genetic in origin. In response, the Court stated that: “In our view, however, since so *171 many variables are involved, the test result will raise more questions than it will answer and hardly aid in the resolution of the question of causality. Even if maternal IQ may be a factor in determining a child’s intelligence, extending the inquiry into this area would ‘dramatically broaden the scope of litigation’ * * * turning the fact-finding process into a series of mini-trials regarding, at a minimum, the factors contributing to the mother’s IQ and, possibly, that of other family members. ‘There is no logical end to the litigation inquiry once individual boundaries are crossed.’ [Citations omitted.]” (Andon v 302-304 Mott St. Assocs., supra, at 40-41.)
The First Department reversed the trial court’s grant of the motion to compel the I.Q. examination. In closing, the Court noted that the I.Q. examination is intrusive and although the answers to such a test may not be confidential, “it is undeniable that the information obtained — an individual’s IQ — is a private and highly personal matter.” (Andon v 302-304 Mott St. Assocs., supra, at 41.)
Evaluating the instant application within the parameters articulated in Milevoi and Andón (supra), the court finds that the defendants have failed to sustain their burden warranting a deviation from traditional notions of plaintiff-centered discovery and authorizing the expansive and intrusive nonparty disclosure requested. Initially, although defendants submitted an expert’s affidavit in support of their application, the proof submitted is deficient in proving the relevance of the requested discovery. Specifically, defendants have failed to offer any testimony establishing that plaintiffs’ objective clinical criteria and educational and social data, when evaluated within an expert context, is insufficient for defendants to determine the extent to which the adverse effects of lead paint exposure contributed to the infants’ mental and physical condition. In addition, defendants have failed to demonstrate how the specific information sought herein pertains to any disability or developmental impairment experienced by these plaintiffs. (See, Monica W. v Milevoi, 252 AD2d 260, 263, supra; Alexander v Westminster Presbyt. Church, 267 AD2d 1102 [4th Dept 1999], supra; Espinal v 570 W. 156th Assocs., 174 Misc 2d 860, supra; Washington v Bayley Seton Hosp., Sup Ct, NY County, May 1, 1998, Abdus-Salaam, J., index No. 108272/94, supra.) Rather, defendants’ expert, Robert J. McCaffrey, Ph D, merely states in general terms that the information and records sought are necessary to “fully assess the validity of the plaintiffs’ claims” which include “significant cognitive deficiencies including a *172 loss of intelligence and IQ reduction.” Dr. McCaffrey supports his asserted need for the disclosures by stating only that the evaluation of the infant plaintiffs’ conditions based on a review of their parents’ and sibling’s educational and employment records and the information to be obtained from having their mother submit to an I.Q. test is “well accepted in his field of practice” of neuropsychology, and supports this statement by submitting portions of a book entitled Lead Exposure and Child Development, An International Assessment.
Secondarily, but equally important, defendants have failed to establish that the requested discovery will serve to narrow and focus the scope of the litigation and aid in the resolution of the causality issue. To the contrary, it is apparent that, if the requested disclosure is allowed, defendants will merely embark on a highly intrusive and, yet, never-ending foray into the realm of speculation, that offers no hope of achieving a resolution of any causality issue. For example, although defendants limit their inquiry to records pertaining to the plaintiffs’ mother, father and nonparty siblings, if it is their contention that the cognitive deficiencies at issue may have resulted from biological, genetic, or environmental causes, why not expand discovery to include the plaintiffs’ grandparents, aunts, uncles, cousins and other biologically or even nonbiologically related family members. Moreover, if it is revealed that any one of these persons has a cognitive deficit, would not defendants’ argument demand full discovery from anyone related to that individual and so on ad infinitum? In short, the defendants have failed to demonstrate a need to obtain the nonprivileged records and information they seek that outweighs the nonparties’ rights to privacy or this court’s obligation to interpret the rules of discovery with their established purpose of “sharpening the issues and reducing delay and prolixity.” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406, supra.) Before this court will consider condoning the scope of the nonparty discovery sought by defendants in this case, the proponent must establish that: (1) plaintiffs’ objective clinical criteria and educational and social data, when evaluated within an expert context, is insufficient for defendants to determine the extent to which the adverse effects of lead exposure contributed to the infants’ mental and physical condition; (2) how the specific information sought pertains to any disability or developmental impairment experienced by these specific plaintiffs; and (3) how the requested discovery will serve to narrow and focus the scope of the litigation and aid in the resolution of the question *173 of causality. (See, Monica W. v Milevoi, supra; Andon v 302-304 Mott St. Assocs., supra.)
In view of the foregoing, defendants are not entitled to discover the educational and employment records of the infant plaintiffs’ parents, Christina’s educational records or to question Kelly Van Epps about Christina’s educational or developmental history. In addition, defendants are not entitled to have Kelly Van Epps submit to an I.Q. test.
The regulation of the terms and provisions of disclosure so as to prevent abuse through the issuance of a protective order under CPLR 3103 is generally left to the sound discretion of the trial court. (See, Scalone v Phelps Mem. Hosp. Ctr., 184 AD2d 65, supra.) Upon the assertion of a privilege or in view of a lack of relevance, under CPLR 3103 (a) “[t]he court may at any time on its own initiative, or on motion of any party or of any person from whom discovery is sought, make a protective order denying, limiting, conditioning or regulating the use of any disclosure device. Such order shall be designed to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.”
Accordingly, with respect to motion items (a), (b), (c), (d), (e), (i), (j), (k) and (I), defendants’ motion is denied and plaintiffs’ motion for a protective order is granted. With respect to motion items (f), (g) and (h), defendants’ motion is granted and plaintiffs are directed to provide responses to these items or an affidavit stating that such information does not exist within 30 days of the date of this order.

 See also Espinal v 570 W. 156th Assocs. (supra), where the Supreme Court, New York County, found that the expert’s theoretical argument that there may be a genetic or sociological cause of the plaintiffs’ alleged disabilities in a lead injury action was insufficient to overcome the nonparty siblings’ rights to privacy to compel discovery of their academic records, and Washington v Bayley Seton Hosp. (supra), where the same court found that defense counsel’s statement that at the time of trial, the defense was very likely to argue that whatever deficits, cognitive or otherwise, that existed in the infant plaintiffs, were the result of environmental and genetic factors, was not a sufficient basis upon which to compel plaintiffs mother to answer a wide-ranging catalog of questions that delved into the personal matters of nonparties to the action including their academic background and achievements, I.Q.s, medical histories, developmental milestones and hobbies.