OPINION OF THE COURT
Joan A. Madden, J.
*640 Defendant City of New York moves, and codefendants, 1845 7th Avenue Realty Associates, L.P., 1845 7th Avenue, Inc., Ari Parnés and Sharp Management Corp., cross-move, for an order compelling plaintiffs to provide authorizations for the siblings’ complete school records, including colleges or universities attended, courses taken and grades received, teacher reports and evaluations, and the results of standardized tests, SAT and advanced placement tests, and psychological testing and evaluations. Alternatively, defendants move and cross-move for an order precluding plaintiffs from offering any evidence at trial regarding the academic performance of the infant plaintiff’s siblings.[1] Plaintiffs oppose the motion and cross motion.
This is an action for damages for personal injuries sustained by the infant plaintiff, Jordan Nieves, born on September 5, 1992, as the result of exposure to lead-based paint while residing at 1851 7th Avenue, apartment 15, New York, New York. In May 1997, defendant City served a demand for discovery and inspection requesting, inter alia, the name, date of birth and current address of any siblings of the infant plaintiff, and for each sibling, the “[njames and addresses of any and all schools, pre-schools or day-care centers attended, and duly executed authorizations allowing those institutions to release their records to the defendant(s).” Plaintiffs responded with the names and dates of birth of three siblings (Kevin Michael Cleare, date of birth Jan. 9, 1981; David Christopher Nieves, date of birth Feb. 16, 1981; and Ishmael Cleare, date of birth Oct. 3, 1983), but objected to the demand for academic information as “seeking] irrelevant and private information.” In August 1998, codefendants served a demand for authorizations to obtain the complete educational records of the infant plaintiffs siblings, to which plaintiffs’ counsel objected.
In May 1999, plaintiffs served their response for expert information, which identified Dr. Leon I. Charash, M.D., a pediatric neurologist, as their expert witness, and annexed his April 6, 1999 report. In that report, Dr. Charash concludes that Jordan Nieves “is behind academically and has been tested as having problems with processing of information and problems with attention deficit disorder. These are all evident on today’s examination. Within reasonable certainty his lead poisoning is causally responsible for these problems and has *641 significantly impacted upon his intelligence and his ability to achieve academically as well as his problems with coordination and speech. Finally, of course, his attention deficit problems are additionally viewed as being related to his plumbism. Of special interest is the fact that he has three older siblings, one of whom entered UCLA having finished high school a year earlier than normal. Another brother has done well at school and is planning to go onto college and to study law if possible. His sixteen year old brother is also doing well. There is some indication that all three of these boys have been variably placed in gifted programs through their school careers.”
In support of this motion to compel or preclude, defendants contend that they are entitled to discovery regarding the siblings’ academic performance, because it bears directly on a significant issue raised by plaintiffs. Defendants assert that plaintiffs now intend to use the very evidence they deemed irrelevant and refused to give discovery on two years ago, to support their own claim that Jordan would have gone to college if he had not been exposed to lead paint. According to counsel for defendant City, when the parties appeared for a compliance conference before this court on June 4, 1999, “plaintiffs’ attorney admitted that plaintiffs would claim at trial that Jordan would have attended college but for his lead poisoning, and intended to offer fact and expert evidence regarding how Jordan’s siblings had done academically.” Defendants argue that if plaintiffs are permitted to offer evidence as to the successful academic performance of Jordan’s brothers, defendants are entitled to the brothers’ school records, so that they will be in a position to refute plaintiffs’ claim and to cross-examine Dr. Charash and any other witnesses testifying as to this issue. Alternatively, defendants argue that if plaintiffs do not wish to provide such discovery, they should be precluded from offering any evidence of the brothers’ academic performance.
In opposition to the motion, plaintiffs assert that the brothers’ school records are not material and relevant to any issue in this action, and that defendants are entitled only to the general factual observations of the infant plaintiff’s mother, who testified at her further deposition as to the specific schools attended by the siblings and the dates of attendance. Plaintiffs assert that Dr. Charash did not examine the siblings’ school records, and the statements in his report are based on the history provided by the infant plaintiff’s father, who made general observations of his children’s academic performance. Alternatively, plaintiffs argue that if the motion to compel is granted, the records should be examined by the court in camera.
*642 In its reply affirmation, the City asserts that the further deposition of Cordell Cleare does not resolve the issue of the siblings’ school records, as Ms. Cleare had limited knowledge of Kevin and Ishmael’s academic performance, and absolutely no knowledge of David Nieves’ academic background or performance. Specifically, with respect to Kevin and Ishmael, Ms. Cleare was unable to answer any questions concerning the courses takén and grades received, the results of standardized tests, plans for post-secondary education, and teachers’ reports and evaluations.
Defendants’ motion and cross motion to compel disclosure or to preclude are denied except to the limited extent indicated below. It is undisputed that two siblings, Kevin Cleare and David Nieves, have both reached the age of majority, and, as such, only they, nonparties to this action, can provide the authorizations sought by defendants. (Muniz v Preferred Assocs., 189 AD2d 738 [1st Dept 1993].) Moreover, pursuant to CPLR 3120 (b), the court cannot issue an order requiring nonparty disclosure, unless the nonparty has been “served with the notice of motion in the same manner as a summons.” (Blake v LP 591 Ocean Realty, 237 AD2d 554 [2d Dept 1997].) As neither Kevin Cleare nor David Nieves was served with the order, to show cause or the notice of cross motion, the court lacks jurisdiction over them for the purposes of the motion and cross motion. (Supra.)
In any event, even if Kevin Cleare and David Nieves had been properly served, the motion and cross motion to compel disclosure is hereby denied with respect to the academic records of all three siblings, as defendants’ discovery demand is overbroad, and the relevance and materiality of the requested information to any claim or defense in the action has not been established. (See, Andon v 302-304 Mott St. Assocs., 94 NY2d 740; Monica W. v Milevoi, 252 AD2d 260, 263 [1st Dept 1999]; McGuane v M.C.A., Inc., 182 AD2d 1081 [4th Dept 1992].)
Generally, in the reported decisions on disclosure in lead paint cases, defendants seek intelligence quotient (I. Q.) testing, and medical, academic and employment records of parents and siblings, who are usually nonparties, to dispute the issue of causation, theorizing that the requested information may lead to the discovery of admissible evidence relevánt to whether the infant plaintiff’s condition is the result of a genetic disorder or some environmental factor other than lead. (See, e.g., Andon v 302-304 Mott St. Assocs., supra; Monica W. v Milevoi, supra, at 263 [1st Dept 1999]; Wepy v Shen, 175 AD2d 124 [2d Dept *643 1991]; Baldwin v Franklin Gen. Hosp., 151 AD2d 532 [2d Dept 1989]; Van Epps v County of Albany, 184 Misc 2d 159 [Sup Ct, Albany County]; Espinal v 570 W. 156th Assocs., NYLJ, Dec. 31, 1998, at 27, col 2 [Sup Ct, NY County]; Washington v Bayley Seton Hosp., NYLJ, May 12, 1998, at 25, col 5 [Sup Ct, NY County]; Anderson v Seigel, 175 Misc 2d 609 [Sup Ct, Kings County], affd as mod 255 AD2d 409 [2d Dept 1998]; Eagle and Biblow, Courts in Lead Cases Allow Discovery of Siblings’ Academic and I. Q. Records, NYLJ, Apr. 12, 1999, at 1, col 1; Viner Samborn, Blame It On the Bloodline, Discovery of Nonparties’ Medical and Psychiatric Records is Latest Defense Tactic in Disputing Causation, 85 ABA J 28 [Sept. 1999]; Wriggins, Genetics, IQ, Determinism, and Torts: The Example of Discovery in Lead Exposure Litigation, 77 BU L Rev 1025 [1997].) In the decisions reported to date, the First Department, Appellate Division and the Second Department, Appellate Division rely on the identical legal principles in analyzing the issues on a case-by-case basis, but have split on the outcomes reached. The First Department so far has denied such disclosure (Andon v 302-304 Mott St. Assocs., 257 AD2d 37 [1st Dept 1999], affd 94 NY2d 740, supra; Monica W. v Milevoi, supra; Alexander v Westminster Presbyt. Church, 267 AD2d 1102 [4th Dept 1999]; Muniz v Preferred Assocs., supra), and the Second Department has consistently granted it (Anderson v Seigel, 255 AD2d 409 [2d Dept 1998], supra; Salkey v Mott, 237 AD2d 504 [2d Dept 1997]; Davis v Elandem Realty Co., 226 AD2d 419 [2d Dept 1996]; Wepy v Shen, 175 AD2d 124 [2d Dept 1991], supra; Baldwin v Franklin Gen. Hosp., supra).
The one opinion by the Court of Appeals rendered recently in Andon v 302-304 Mott St. Assocs. (supra) affirmed the First Department, Appellate Division’s denial of defendants’ motion to compel the plaintiff mother to submit to an I. Q. test. Rejecting defendants’ argument that the Appellate Division had created a “blanket prohibition” against discovery of maternal I. Q. in all lead paint cases, the Court of Appeals found that the Appellate Division had “evaluated defendants’ request in the context of this case and in light of the evidence presented to it. The Appellate Division concluded that the burden of subjecting plaintiff-mother to an IQ test outweighed any relevance her IQ would bear on the issue of causation. The Court noted that the mother’s mental condition is not in dispute and that IQ results, while not confidential, are private. Under these circumstances, we are satisfied that the Appellate Division did not abuse its discretion as a matter of law.” (Supra, at 747.)
*644 Here, neither plaintiffs nor defendants have made a sufficient showing that the siblings’ academic records are relevant or material to the question of whether the infant plaintiffs cognitive deficits and emotional behavior problems are causally related to his ingestion of lead paint. The discovery dispute over the siblings’ academic records resurfaced when plaintiffs exchanged the report of their expert neurologist, Dr. Charash. This report includes limited secondhand information about the siblings’ successful academic performance, which Dr. Charash attempts to use as further support for his conclusion that the infant plaintiffs impairments were caused by exposure to lead paint. However, any claim by plaintiffs, that there is a correlation between the infant plaintiffs impairments and his siblings’ academic performance, is speculative, at best. (See, Monica W. v Milevoi, 252 AD2d 260, 264, supra; Andon v 302-304 Mott St. Assocs., 257 AD2d 37, 40, supra.) Just as in Monica W. v Milevoi, the parties have failed to produce an expert affidavit “to demonstrate that the extent to which the adverse effects of lead exposure contributed to the mental and physical condition of the infant plaintiffs cannot be ascertained by reference to objective clinical criteria and expert testimony.” (Supra, at 263.) Defendants likewise fail to show how the siblings’ academic information pertains to any disability or developmental impairment experienced by the infant plaintiff, as the record contains no indication that the siblings share any of the infant plaintiffs impairments. (See, Alexander v Westminster Presbyt. Church, supra; cf., Wepy v Shen, supra [infant plaintiffs mother testified that phenobarbital was prescribed for one sibling and other sibling was diagnosed as having learning disabilities, and defendant submitted medical affidavit as to possible connection between plaintiffs and siblings’ neurological problems]; Baldwin v Franklin Gen. Hosp., supra [mother testified that infant plaintiff had a speech impairment and that brother had a speech impairment and learning disabilities].) To the contrary, Ms. Cleare testified that the siblings Kevin Cleare and Ishmael Cleare were never evaluated for any special education, speech or learning problems, and that they were both-in gifted programs at various times.
Thus, under the circumstances presented, neither proof nor case law provides a basis for concluding that the siblings’ academic records are material and relevant to the issue of causation. However, if at trial plaintiffs intend to introduce evidence that the siblings attended certain schools or certain programs, plaintiff's shall provide defendants with documentary proof of *645 the siblings’ enrollment at the schools, within 45 days of the date of this order. The court herein makes no determination as to the admissibility of such evidence at trial, which shall be reserved for the trial court.

. As Cordell Cleare appeared for a continued deposition on July 26, 1999, defendants have withdrawn that portion of the motion and cross motion to compel her further deposition regarding the academic performance of the infant plaintiffs siblings.