**JB and JEB, minor children, by and through their natural parents and guardians, Jimmy Dale PALMER and Teresa Palmer, Plaintiffs,**

v.

**ASARCO, INCORPORATED, et al., Defendants/Third Party Plaintiffs,**

v.

**United States of America, et al., Third–Party Defendants.**

Nos. 03–CV–498–H(C), 03–CV–565–H to 03–CV–567–H, 03–CV–569–H.

United States District Court, N.D. Oklahoma.

Dec. 2, 2004.

Tony Wayne Edwards, Stipe Law Firm, McAlester, OK, Anthony M. Laizure, Stipe Law Firm, Tulsa, OK, Charles F. Speer, Payne & Jones, Overland Park, KS, Christopher A. Seeger, Christopher J. Murray, Seeger Weiss LLP, New York, NY, Robert F. Kennedy, Jr., Kevin J. Madonna, Kennedy & Madonna LLP, Woodstock, NY, for Plaintiffs.

Paul D. Kingsolver, Albright, Rusher & Hardcastle, Michael D. Graves, Terrance Lane Wilson, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, Gerald F. Masoudi, Kirkland & Ellis, Washington, DC, Donald E. Scott, Bartlit, Beck, Herman, Palenchar & Scott, Denver, CO, Richard A. Ahrens, Lewis, Rice & Fingersh LC, Saint Louis, MO, John H. Tucker, Colin H. Tucker, Theresa Noble Hill, Rhodes, Hieronymus, Jones, Tucker & Gable, William C. Anderson, George Michael Lewis, Russell Wayne Kroll, Linda C. Martin, Doerner, Saunders, Daniel & Anderson, Jamie Taylor Boyd, Shipley, Jennings & Champlin, Tulsa, OK, Doug McAllister, Phoenix, AZ, John K. Sherk, III, Stanley D. Davis, Shook, Hardy & Bacon, Kansas City, MO, Mark Anstoetter, Kirk F. Marty, Shook, Hardy & Bacon LLP, Overland Park, KS, Robert Joseph Joyce, Scott McDaniel, Chris A. Paul, Jon M. Payne, Joyce, Paul & McDaniel PC, Tulsa, OK, for Defendants.

1. For purposes of analysis the dismissed Plaintiffs are further subdivided into two groups: 1) the dismissed Plaintiffs who are siblings of Plaintiffs remaining in the lawsuit are referred to as "the dismissed siblings", and 2) the dismissed Plaintiffs who are not siblings of remaining Plaintiffs are referred to as "the dismissed nonsiblings."

2. The seven remaining Plaintiffs are denominated JB, BH, MH, TS, ZS, JS, and SN. Due to

## ORDER

CLEARY, United States Magistrate Judge.

This matter came before the undersigned on November 1, 2004, for hearing on the Motion to Compel Production of Documents [Dkt. # 171] filed by Defendants ASARCO Incorporated ("ASARCO"), Blue Tee Corp., Doe Run Resources, Inc., and Gold Fields Mining Corporation (hereafter, referred to jointly as "Defendants"). For the reasons set forth below, the motion is *GRANTED IN PART AND DENIED IN PART.*

### Background

These actions originally involved 26 Plaintiffs making identical allegations that they suffered personal injuries caused by exposure to lead resulting from lead and zinc mining operating in the Tar Creek area. Plaintiffs asserted claims for negligence, strict liability and nuisance. Plaintiffs served their medical experts' reports on or about April 16, 2004.

In February and March 2004, 20 of the 26 original Plaintiffs were examined by neuropsychologists Bonny Forrest and Jeanette Wasserstein. The purpose of this examination was to evaluate the Plaintiffs for purposes of having Forrest and Wasserstein offer expert opinions about their condition. Between April 16 and May 4, 2004, 19 of the original Plaintiffs (collectively, "the dismissed Plaintiffs" [1]) dismissed their claims without prejudice. Thus, for purposes of this analysis, these 19 individuals are now non-parties to this litigation. This leaves seven of the original 26 Plaintiffs ("the remaining Plaintiffs") still asserting claims.[2] In July, Defendants subpoenaed the records of Wasserstein, Forrest and Dr. Wayne Snodgrass[3]

confusion over some of the children's last names, "JB" is sometimes referenced as "JP" and "ZS" is sometimes referred to as "BS." [See pp. 2–3 of Defendants' Motion to Compel.]

3. Dr. Wayne R. Snodgrass is a toxicologist listed as an expert witness. Plaintiffs represent that Dr. Snodgrass evaluated only the seven remaining Plaintiffs and did not evaluate the 19 dismissed Plaintiffs. In reliance on this representation, the Court finds Defendants' motion moot as

with respect to all 26 original plaintiffs—the remaining Plaintiffs *and* the dismissed Plaintiffs. Plaintiffs have offered to produce all documents/information considered by the neuropsychologists pertaining to the remaining Plaintiffs, but refuse to provide documents relating to the dismissed Plaintiffs.

Plaintiffs contend that these records are not discoverable because: (1) they are irrelevant to the claims or defenses of any party since the dismissed Plaintiffs no longer assert any claim herein; (2) the information is protected by physician-patient privilege; and, (3) the information is protected work product.

Defendants contend the information must be produced pursuant to Fed.R.Civ.P. 26(a)(2) which requires an expert witness to disclose all information underlying his or her report. Defendants further assert that the information is relevant, that any physician-patient privilege or work product protection was waived when the dismissed Plaintiffs put their health at issue in this litigation.

A hearing on the Motion to Compel was held on November 1, 2004, before the undersigned. Supplemental briefing was requested and, at the Court's request, a copy of an expert report pertaining to one of the Plaintiffs was submitted for *in camera* review.

## Discussion

### A. Background of the Dispute.

A significant issue today in tort cases such as this is the extent to which discovery of medical information relating to non-parties—particularly parents and siblings of the plaintiff—is discoverable. See, for example, Jennifer Wriggins, *Genetics, IQ, Determinism, and Torts: The Example of Discovery in Lead Exposure Litigation*, 77 BULR 1025 (1997); Hope Viner Sanborn, *Blame It On the Bloodline, Discovery of Nonparties' Medical and Psychiatric Records is Latest Defense Tactic in Disputing Causation*, 85 A.B.A. J. 28 (1999). The argument against allowing discovery relating to non-parties is neatly summarized by Professor Wriggins:

Broadening the causation and damages inquiry beyond the plaintiff, by either party, is likely to dramatically broaden the scope of the litigation. Such an expansion is contrary to current trends in litigation, which aim to streamline and limit discovery procedures. For example, if the educational records of a plaintiff's sibling reveal a learning disability, the parties will need to consider the possible causes of that learning disability. If only one of two siblings of the plaintiff has a learning disability, the inquiry becomes more complicated. There is no logical end to the litigation inquiry once individual boundaries are crossed.

*Id.* at 1060 (citations omitted) (emphasis added).

The issue of non-party discovery has arisen frequently in the context of scope of discovery. Some courts, citing the broad discovery provision contained in Rule 26(b)(1) have permitted discovery of non-party information because they found it relevant or reasonably calculated to lead to the discovery of admissible evidence. E.g., *Stewart v. Nassau*, No. 89–8214 (Civ. Dist. Ct. Orleans Par. Jan. 19, 1996) (court-ordered neuropsychological testing of plaintiff's non-party sister relevant in lead paint exposure case); *Anderson v. Seigel*, 255 A.D.2d 409, 680 N.Y.S.2d 587 (1998) (academic records of plaintiff's siblings, IQ testing of plaintiff's mother relevant to cause of Plaintiff's cognitive defects in lead paint exposure case); *Salkey v. Mott*, 237 A.D.2d 504, 656 N.Y.S.2d 886 (1997) (trial court's decision ordering Plaintiff's mother to take IQ test within court's discretion in lead paint exposure case). *See generally*, Wriggins, *supra*, at pp. 1073–1079.

Other courts have rejected discovery of non-party siblings and parents as beyond the scope of Rule 26. *E.g.*, *Monica W. v. Milevoi*, 252 A.D.2d 260, 685 N.Y.S.2d 231, 234 (1st Dep't 1999) (rejecting requested discovery in lead paint case because mental condition of non-party siblings irrelevant to any

---

to any evaluations of the dismissed Plaintiffs by Dr. Snodgrass. However, if Dr. Snodgrass received and considered information pertaining to the dismissed Plaintiffs in forming his opinions

as to the remaining Plaintiffs, this information must be produced for the reasons set forth below.

claim or defense in case); *Andon v. 302–304 Mott Street Assoc.,* 257 A.D.2d 37, 690 N.Y.S.2d 241 (1st Dep't 1999) (IQ testing of Plaintiff's mother not permitted because such information would not resolve issue of causation in lead paint exposure case); *Van Epps v. County of Albany,* 184 Misc.2d 159, 706 N.Y.S.2d 855, 864–65 (Sup.Ct. Albany Co.2000) (defendants in lead paint exposure case failed to show relevance of academic and medical records of Plaintiff's mother and sibling).

The cases cited above differ from the instant case in several ways: First, the cited cases all involve lead paint ingestion rather then lead dust inhalation. There is likely to be greater similarity in sibling's exposure to lead when inhaled involuntarily then when the lead is ingested voluntarily. Second, the cited cases generally involve the scope of discovery under Rule 26(b), not the disclosures required of a testifying expert under Rule 26(a)(2)(B). Finally, the cited cases apparently do not involve individuals who were originally parties to the action and only became non-parties after voluntarily dismissing their claims. Might this not affect the privacy expectations of the individuals at issue?

### B. Requirements of Rule 26(a)(2).

Rule 26(a)(2)(B) requires that parties identify any expert witness who will testify at trial and provide a written report prepared and signed by the witness. The report must contain a complete statement of all opinions to be offered as well as "the data or other information considered by the witness in forming the opinions."

> Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their expert to be used in *forming their opinions—whether or not ultimately relied upon by the expert—* are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

Fed.R.Civ.P. 26, advisory committee's note to 1993 Amendments.

■ Any type of work product or other privilege is lost when the material is disclosed to and considered by a testifying ex-

pert. *Johnson v. Gmeinder,* 191 F.R.D. 638, 646–47 (D.Kan.2000) (even the *absolute* immunity provided for opinion work product must give way to Rule 26(a)(2)(B)'s "all encompassing rule of disclosure.") Documents are "considered" under Rule 26(a)(2)(B) if the expert has "read or reviewed the privileged materials before or in connection with formulating his or her opinion." *Lamonds v. General Motors Corp.,* 180 F.R.D. 302, 306 (W.D.Va.1998). "Considered" is a broader term than "relied upon" and includes material the expert examines but rejects. *Baxter Diagnostics, Inc. v. AVL Scientific Corp.,* 1993 WL 360674 at *1 (C.D.Cal.). *See also, Western Resources, Inc. v. Union Pac. Railroad Co.,* 2002 WL 181494 at *9, n. 13 (D.Kan.) (documents considered but rejected by a testifying expert may be necessary for effective cross-examination).

■ Defendants argue that Rule 26(a)(2)(B) requires Forrest and Wasserstein to provide all information in their files—including that pertaining to the dismissed Plaintiffs. Plaintiffs contend that Defendants are limited by the scope of discovery set forth in Rule 26(b)(1) and that the requested information need not be produced because it is not relevant to any pending claim or defense and is not reasonably calculated to lead to discovery of admissible evidence and, furthermore, it is privileged under the Physician–Patient privilege or work product doctrine.

Rule 26(a)(2)(B) requires that testifying experts produce all material that was considered by them in forming their opinions. If the subject of the materials directly relates to the opinion in the expert report, this creates at least an ambiguity as to whether the materials informed the expert's opinion. *Monsanto Co. v. Aventis Cropscience, N.V.,* 214 F.R.D. 545, 547 (E.D.Mo.2002). Courts have held that ambiguity as to whether a witness considered certain materials in forming his or her opinion as a testifying expert should be resolved in favor of disclosure. *Cf. Messier v. Southbury Training Sch.,* 1998 WL 422858, at *4 (D.Conn.). As the court noted in *Western Resources:*

[T]o determine whether an expert "considered" materials, *as that term is commonly used,* would require the court to explore the expert's subjective mental processes and risks the creation of an unwieldy rule that would provide uncertainty as to the protected status or work product or other privileged materials. The Court believes it is important for practitioners to have a more definitive rule under which they can determine whether waiver has occurred. This is so even if the testifying expert avers under oath that he did not actually consider such materials in formulating his opinion.

*Id.* at \*9 (citing *Gmeinder,* 191 F.R.D. at 647) (emphasis in original).

Clearly, any material in the files of Wasserstein, Forrest and Snodgrass that relates to the seven remaining Plaintiffs, must be produced. Furthermore, any material relating to the dismissed Plaintiffs that the experts relied upon in forming their opinions about the remaining Plaintiffs must be disclosed. Finally, material concerning the dismissed Plaintiffs that the experts considered in forming their proffered opinions, and whose disclosure outweighs the privacy interests of the individuals involved, must be disclosed. Establishing the relevance of nonparty information involves a balancing of the interests of the parties and public policy. Discovery that broadens the scope of the litigation and intrudes upon privacy rights should not be permitted "unless there is a showing that the need for disclosure outweighs the importance of protecting nonparties' privacy." *Van Epps,* 706 N.Y.S.2d at 860.

Defendants have submitted the affidavit of their expert, psychologist Nancy Hebben, stating that in evaluating causation in a lead exposure case one must examine all information relating to "the educational, medical, neurological, environmental, social and psychiatric history of the plaintiff and his/her immediate family." [Aff. ¶ 7]. Hebben states that it would be important to consider whether a sibling "has neuropsychological deficits that are not caused by lead, or has been exposed to lead but does not have neuropsychological deficits." [Hebben ¶ 11]. In addition, in the expert report submitted to the court for *in camera* review Forrest refers to the mental condition of T.S.'s two siblings.

There are four dismissed siblings whose information is at issue. South: T.S., C.S. and S.S. underwent neuropsychological testing on February 23–25, 2004, and Forrest issued an expert report as to T.S. on or about April 16, 2004. Thereafter, S.S. and C.S. dismissed their claims. Moss: Similarly, M.H. (Moss) and B.H. (Moss) were tested on Feb. 27, 2004 and D.M. in March. D.M. has dismissed his claims. Nowlin: S.N. was tested on Feb. 28, 2004 and his brother, Chad, was tested in March. Chad's claims have been dismissed. Expert reports on the remaining Plaintiffs were produced in April 2004; thus, it is clear that the expert witnesses had information regarding the dismissed siblings in hand when their expert reports on the remaining Plaintiffs were being drafted. This creates sufficient ambiguity as to whether the information regarding the dismissed siblings was considered by the experts that the undersigned finds it should be disclosed unless such disclosure is outweighed by privacy considerations.

Such disclosure will infringe upon the privacy rights of the dismissed siblings; however, the undersigned concludes that this infringement is relatively slight because information concerning the dismissed siblings is already implicated by the family medical histories of their siblings who remain in the lawsuit. Furthermore, courts have held, and the undersigned finds, that medical information concerning non-party siblings is relevant to or may lead to admissible evidence regarding the cause of the cognitive disabilities alleged herein.[4] Therefore, in-

---

4. Professor Wriggins would likely argue to the contrary; however, the focus of her article was lead paint ingestion cases. The undersigned believes that there very likely would be a wide difference between siblings as to lead paint ingestion. Thus, the medical history of a sibling who did not ingest lead paint would have ques-

tionable relevance to the case of a sibling who did ingest paint. Here, however, the lead exposure is alleged to have occurred through inhalation of lead dust. In the undersigned's opinion, this presents greater probability of the relevance of non-party sibling data.

formation regarding the dismissed siblings must be produced as part of the materials considered by the Plaintiffs' experts.

 The analysis with respect to the dismissed non-siblings produces a contrary result. Hebben's affidavit offers little to establish any specific need for medical information concerning the 15 dismissed non-siblings and no evidence has been produced indicating that this information has any relevance to the opinions offered by Forrest or Wasserstein. Furthermore, while some courts cited herein have allowed discovery of confidential information regarding parents or siblings of a plaintiff claiming personal injury as a result of lead exposure, the defendants have not identified—and the undersigned has not found—any case where such discovery has been extended to a non-party *non-sibling.* Additionally, the undersigned concludes that the privacy rights of the dismissed non-siblings are not outweighed by any need for this discovery. The non-party non-siblings' data is not directly relevant to any claim or defense herein and is not likely to lead to admissible evidence. Since these individuals are no longer involved in this litigation and have no close family relationship to a Plaintiff, the data and information pertaining to the dismissed non-siblings need not be produced as part of the experts' reports.

## C. Relevance of the Information to the Remaining Plaintiffs' Claims.

Information regarding the dismissed non-siblings may still be discoverable if relevant and non-privileged. As stated above, the undersigned concludes that information regarding non-party non-siblings is not relevant to any claim or defense in this case. As Professor Wriggins notes in her article, a basic principle of tort law has been that a personal injury claim brought by an individual puts that person's physical or mental condition at issue and that medical records of non-parties are generally not discoverable. Wriggins, *supra,* at 1055–57. The undersigned agrees that discovery should generally remain Plaintiff-centered and that if discovery is expanded beyond the Plaintiffs and siblings identified above, there may be "no

logical end to the litigation inquiry." *Wriggins* at 1061.

Accordingly, Defendants' Motion is **_GRANTED IN PART AND DENIED IN PART._** The Motion is GRANTED with respect to the dismissed sibling Plaintiffs. Information concerning the dismissed *sibling* Plaintiffs—DM, SS, CS, and Chad N—shall be produced to Defendants pursuant to Fed.R.Civ.P. 26(a)(2)(B). The Motion is DENIED with respect to the dismissed *non-sibling* Plaintiffs. Information concerning these individuals need not be produced because it is not relevant to any claim or defense in the lawsuit, is not reasonably calculated to lead to discovery of admissible evidence, and any probative value is outweighed by the individuals' privacy rights.