Jana SCHEMPP, et al., Appellant,

v.

Jay RENIKER, Appellee.

No. 86–5048.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1986.

Decided Jan. 21, 1987.

Wayne F. Gilbert, Rapid City, S.D., for appellant.

Thomas J. Nicholson, Sioux Falls, S.D., for appellee.

Before ROSS and WOLLMAN, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

The case at bar involves a private tort action on behalf of a child born March 1, 1980 (brought by her grandparents, the parents of defendant's ex-wife, as guardians ad litem) against her father, Jay Reniker, alleging sexual abuse. The instant action is the third court case involving these charges, and in connection with the present litigation the District Court ordered, under Rule 35(a) FRCP,[1] upon defendant's motion, an examination of the child by two psychologists and a physician.

Jayne Schempp (formerly Jayne Reniker), the child's mother, refused to permit the child Jana Schempp (formerly known as Jana Reniker) to be examined unless she, Jayne, the mother, were permitted to be present at all times during the examination. This restriction was rejected by the expert examiners as contrary to proper professional practice. Thus no examination took place, and defendant (Jay Reniker, the father of Jana) moved for sanctions and/or summary judgment.[2] The matter was disposed of by the District Court with perhaps Solomonic wisdom. The motion for summary judgment was denied, as it would be

unfair to deprive the child, Jana, of her judicial remedy when the obstruction to the proceedings was clearly the fault of the mother, Jayne, and not of Jana. Hence the action was dismissed, without prejudice to the right of Jana to reactivate proceedings when she becomes *sui juris* and no longer a minor under her mother's influence and control. We affirm.

To elaborate more fully the reasons justifying the District Court's order, a review of the history of the litigious relationships among the parties will be helpful.

Jay and Jayne were married in 1976. Jayne began a divorce action in April, 1984. Soon thereafter claims arose that Jay had sexually abused his children Jana and Jonathan. It is quite possible that these charges had their genesis in the wish to strengthen the wife's case for divorce and custody, though *post hoc ergo propter hoc* is never a conclusively cogent argument.

The charges resulted in a criminal prosecution against Jay. After hearing testimony for eight days, a Minnehaha County jury acquitted him after deliberating little more than two hours.

The sex charges were again litigated in a bitterly contested protracted divorce trial, which was terminated by a settlement.

No abuse of discretion or clearly erroneous findings can be discovered in the District Court's basic determination that "It is obvious that this five-year-old child is not the moving force for this action; it is in

---

\* The Honorable Edward Dumbauld, United States Senior District Judge, of the Western District of Pennsylvania, sitting by designation.

1. Rule 35(a) reads:

   When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, man-

ner, conditions, and scope of the examination and the person or persons by whom it is to be made.

2. Rule 56(c) provides for grant of summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

   Rule 37(b)(2)(E) authorizes the sanctions listed in Rule 37(b)(2)(A), (B), and (C), inclusive. Paragraph (C) permits stay of proceedings "until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." Paragraph (D) excludes contempt of court as a sanction in case of failure to submit to physical or mental examination.

fact a continuation of the litigation previously commenced either by Jayne or commenced at her behest.... [T]he mother, and not the plaintiff [Jana], is the person refusing to permit compliance with the discovery order."

It was stipulated "that the settlement would be full, final and complete, and by going to the extreme of terminating parental rights, the parties are essentially waiving their right to come back in at a further time in the future and re-open this matter concerning child custody, support and alimony, or anything else." [3]

As the District Court noted, the divorce settlement "did not settle any individual tort claims which Jana might have against her father" but it did preclude "Jana's mother from either directly or through others bringing the instant action." Accordingly, since "the divorce settlement does not, and could not, preclude Jana from bringing an action on her own behalf, the dismissal of this action [instigated by her mother] must be without prejudice to her right to bring such an action when she reaches her majority."

This judicious disposition of the matter appropriately safeguards the rights of Jana, in accordance with proper application of sanctions under Rule 37 FRCP, and likewise rightly prevents advantage being taken by Jayne of her refusal to comply with the District Court's discovery order.

It would be improvident to remand the case at bar, as appellant suggests, to retry the appropriateness of the District Court's order of November 4, 1985, directing examination of Jana by two psychologists and a physician during a three day period.

Even if there were any error in the District Judge's order, the proper remedy is not disobedience. *U.S. v. United Mine Workers of America*, 330 U.S. 258, 290–94, 303, 67 S.Ct. 677, 694–96, 701, 91 L.Ed. 884 (1947). Jayne's obstructive obstinacy called for an effective judicial response.

Moreover, it is obvious that examination of Jana was essential to the preparation and presentation of appellee's defense, particularly in the light of the mother's pronouncement that the case was to be tried without Jana as a witness.[4] Under that strategy, appellant's case was thus to be proved entirely by hearsay inferences from prior examinations of Jana for purposes of the divorce and criminal cases. To require appellee's defense to be based on such evidence marshaled by his adversaries in connection with other types of litigation, on the ground that a fresh examination for the purpose of aiding in appellee's defense in the case at bar would be repetitious, cumulative, and unnecessary (and hence that "good cause" for the examination would be lacking), would be a far-fetched and irrational conclusion.

Once it is established that examination of Jana is needed on appellee's behalf, there can be no valid objection to the District Judge's order that the examination be conducted in accordance with accepted professional procedures and standards. A court should not undertake to second-guess the professional judgment of the doctors. In any event it seems obvious, even to a legal mind, that under the circumstances a proper examination for purposes of dealing with the issues in the case at bar could not be conducted in the presence of, and subject to the influence or subtle or overt

**3.** The settlement was approved by the parties in the divorce case, as well as by the attorney appointed to represent the children, and by the court. Subsequently, the children's attorney represented the wife in a bankruptcy proceeding undertaken by Jayne in order to avoid payments to Jay Reniker under the property terms of the settlement with respect to division of property between the spouses.

**4.** The District Court's order thus clearly satisfies the "in controversy" and "good cause" requirements of Rule 35. See *Sibbach v. Wilson & Co.*, 312 U.S. 1, 8–9, 16, 61 S.Ct. 422, 423–24, 427, 85 L.Ed. 479 (1941); *Schlagenhauf v. Holder*, 379 U.S. 104, 116–19, 85 S.Ct. 234, 241–42, 13 L.Ed.2d 152 (1964); and *Natl. Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976).

coercion of, Jana's mother during the course of the examination.

Appellants' most appealing argument may be summarized in a paraphrase of Vergil's line conveying the response of Aeneas to the Queen of Carthage's request to tell the story of the fall of Troy:

*Infandum, o judex, jubes renovare dolorem.*[5]

Appellants argue that the order for Jana's examination is a command "to renew unspeakable woe," and would be harmful to the welfare of the child.[6] Even here, however, the record indicates rather that the repeated examinations to which she has been subjected have made her a weary and sophisticated "professional test-taker" who knows the answers before the questions are asked. The experts testified that the sooner examinations are given after the incidents being inquired into occur, the more reliable are the results. Possibly a belated examination would be more harmful to appellee's case than to Jana. In any event the District Judge had the opportunity to hear the witnesses at first hand and to assess the attitudes and characteristics of the parties involved and we are not able to perceive any "plain error" in his factual rulings.

Accordingly the judgment of the District Court is AFFIRMED.

---

**5.** Aeneid, book II, line 3: *"Infandum, regina, jubes renovare dolorem."*

**6.** Jana was born March 1, 1980, and was 5 years old on November 4, 1985, the date of the District Court's order. The complaint alleges that it was "throughout a period of time from December, 1981 to April of 1984" that appellant "did assault and molest [her] in a sexualized and depraved manner."