Almantina CABAN, an Infant, by her Mother and Natural Guardian Carmen CRESPO, Plaintiff,

v.

600 E. 21ST STREET CO., et al., Defendants.

No. 99–CV–8218 (RJD).

United States District Court, E.D. New York.

May 17, 2001.

Alberto Casadevall, Fitzgerald & Fitzgerald, PC, Yonkers, NY, for plaintiff.

Suzanne M. Halbardier, Barry, McTiernan & Moore, New York City, Phebe B. Macrae, Corporation Counsel of City of New York, for defendant.

## *MEMORANDUM AND ORDER*

MANN, United States Magistrate Judge.

Currently pending before this Court is a defense request for a court order compelling Carmen Crespo ("Ms. Crespo"), the mother and natural guardian of Almantina Caban ("Almantina" or "infant-plaintiff"), (1) to submit to testing administered by a psychologist for the purpose of measuring her Intelligence Quotient ("IQ"), and (2) to authorize the release of academic records of the infant-plaintiff's siblings over whom Ms. Crespo maintains legal custody. For the following reasons, this Court declines to order Ms. Crespo to submit to psychological testing, and directs that she provide the Court with the siblings' academic records for an *in camera* inspection.

## *BACKGROUND*

Almantina Caban, a child born on December 8, 1989, *see* Complaint ("Compl.") ¶ 18, was diagnosed with severe lead poisoning and on three occasions in 1994 was constrained to undergo chelation—a chemical process designed to decrease blood lead levels. *See* Transcript of Settlement Conference dated February 2, 2001 ("Tr.") at 13:3–6.[1] On December 15, 1999, Ms. Crespo, in her capacity as the natural guardian of Almantina, filed a complaint in this Court[2]

---

1. Although Ms. Crespo recalled that Almantina underwent chelation four times, the medical records confirm only three hospital admissions for chelation. Tr. at 13:3–6

2. In recent years, Almantina has been residing in Puerto Rico with Ms. Crespo, providing the Court with diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* Compl. ¶¶ 2, 5.

against 600 E. 21st Street Co., Gregios Ntilis, Kosta Stoupakis, and Nick Haviaras ("landlords" or "landlord defendants"), as well as the City of New York (collectively "defendants"). The complaint alleges that Almantina became poisoned after being exposed to chipping and peeling lead paint while residing in apartments managed and owned by the landlord defendants, see Compl. ¶¶ 7–13, 18–48, who are charged with negligence, breach of contract, breach of an implied warranty of habitability, nuisance, and negligent or intentional infliction of mental distress. Id. ¶¶ 49–55, 84–94. The complaint additionally charges the City with breaching a special duty it is alleged to have assumed with respect to the infant-plaintiff. Id. ¶¶ 56–83.

Plaintiff contends that Almantina's exposure to lead paint has caused her to suffer from mild retardation and a low IQ,[3] to perform poorly in school, to require counseling and tutoring, and to be at greater risk for intestinal and liver cancer. See Tr. at 24–28. The complaint demands, on behalf of the infant-plaintiff, an award of compensatory and punitive damages. See Compl. ¶ 96.[4] Ms. Crespo does not assert any individual or derivative claims and thus does not seek damages for herself.[5]

On November 17, 2000, in the middle of discovery, plaintiffs interposed an objection to defendants' request that Ms. Crespo, as the infant-plaintiff's mother, submit to testing by a psychologist retained by the defense. See Letter to the Court dated November 17, 2000, from Alberto Casadevall, Esq. Defendants responded by arguing that the results of the testing might tend to (1) disprove plaintiff's theory of a causal connection between Almantina's exposure to lead paint and her low IQ and cognitive deficits, and (2) minimize any future economic damages by demonstrating that, even absent her exposure to lead paint, the child would not have been likely to succeed in academic and professional settings. See Letter to the Court dated December 5, 2000, from Phebe B. Macrae, Esq., and Suzanne M. Halbardier, Esq. ("Def. 12/5/00 Letter"), at 1–4. Defendants' submissions also sought an order directing Ms. Crespo to provide defendants with authorizations to obtain the academic records of those of the infant-plaintiff's siblings still in Ms. Crespo's legal custody.[6] See id. at 1–4. Plaintiffs object to both requests. See Letter to the Court dated December 13, 2000, from Alberto Casadevall, Esq. ("Pl. 12/13/00 Letter").

## DISCUSSION

### A. Compelled Psychological Testing of Ms. Crespo

■ Defendants correctly note that, in this diversity action, the issue of whether Ms. Crespo should be compelled to submit to psychological testing is governed by Fed. R.Civ.P. 35(a),[7] which provides in relevant part:

> When the mental or physical condition (including the blood group) of a party or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown . . . .

Fed.R.Civ.P. 35(a). See Sibbach v. Wilson & Co., Inc., 312 U.S. 1, 12, 655, 61 S.Ct. 422, 85 L.Ed. 479 (1941) (upholding Rule 35 as a "rule[ ] of procedure" that governs in diversity cases even in the face of conflicting state rules regarding examinations of parties); McNamara v. Dionne, 298 F.2d 352, 355 (2d Cir.1962) ("Rule 35 . . . should prevail over a

---

3. According to plaintiff's counsel, Almantina's verbal IQ is 64, her performance IQ is 78, and her full scale IQ is 69. Tr. at 27:4–9.

4. Punitive damages are sought against the landlord defendants only. See Compl. ¶ 96.

5. Plaintiff's counsel has conceded that such claims would be time-barred. See Letter to the Court dated March 22, 2001, from Alberto Casadevall, Esq.

6. Defendants note that Ms. Crespo no longer has legal custody of at least one of her offspring. See Def. 12/5/00 Letter at n. 1.

7. See Def. 12/5/00 Letter at 1.

contrary state rule."); *see also Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *cf. Hanna v. Plumer,* 380 U.S. 460, 464, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (" 'The test [for whether to apply a federal or state rule in a diversity action] must be whether a rule really regulates procedure ....' ") (quoting *Sibbach,* 312 U.S. at 14, 61 S.Ct. 422).

Although defendants acknowledge that Rule 35 controls in this case, they nonetheless analyze the issue of Ms. Crespo's examination *solely* in terms of whether parental IQ is considered relevant under New York State case law. *See* Def. 12/5/00 Letter at 2 ("while we are not aware of any federal cases dealing with this issue, ... parental IQ testing can be compelled in the New York state courts upon a proper showing of relevance.") (citing *Anderson v. Seigel,* 255 A.D.2d 409, 680 N.Y.S.2d 587, 588 (2d Dep't 1998); *Salkey v. Mott,* 237 A.D.2d 504, 656 N.Y.S.2d 886 (2d Dep't 1997)). Plaintiff likewise argues the sufficiency of defendants' showing of relevance under New York State law, *see* Pl. 12/13/00 Letter at 4–5 (citing *Andon v. 302–304 Mott Street Assocs.,* 94 N.Y.2d 740, 709 N.Y.S.2d 873, 731 N.E.2d 589 (2000); *Andon v. 302–304 Mott Street Assocs.,* 257 A.D.2d 37, 690 N.Y.S.2d 241 (1st Dep't 1999); *Johnson v. Manhattan & Bronx Surface Transit Operating Auth.,* 71 N.Y.2d 198, 204, 524 N.Y.S.2d 415, 519 N.E.2d 326 (1988)), and ignores the fact that Rule 35 governs here.[8]

Before addressing the issue of "relevance" under Rule 35,[9] the Court must first consider the threshold question largely overlooked by the parties to this action: that is, whether a guardian of an infant-plaintiff, suing in her representative capacity, is a "party" or "person in the custody or under the legal control of a party," within the meaning of Fed. R.Civ.P. 35(a).[10] If Ms. Crespo is neither a "party" nor a "person in the custody or under legal control of a party," then the Court is without authority under Rule 35 to order her to undergo any psychological testing.

Pursuant to Rule 17(c), a natural guardian has the right to sue on behalf of his or her child.[11] Whether suing as a natural guardian, as Ms. Crespo does here, as a next friend, or as a court-appointed guardian ad litem,[12] "the representative is a nominal par-

---

**8.** One federal court opinion has similarly mistakenly relied on state law in addressing whether the non-party mother of an infant-plaintiff could be compelled to submit to a blood test. *See Lee Wing Get v. Dulles,* 18 F.R.D. 415 (E.D.N.Y. 1955); *see also* 8A Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2233, at 471 n. 6 (2d ed.1994) (rebuking the *Lee Wing Get* court for its "rather doubtful reliance" on a state statute).

**9.** *See infra* note 17.

**10.** In an argument devoid of any supporting caselaw or other authority, defendants merely assert in conclusory fashion that Ms. Crespo is a "party" under Rule 35(a):

As a party to this action, the Court has the authority to order Carmen Crespo to submit to psychological testing. Fed. R. Civ. P. § 35(a). While Mrs. Crespo is not an individual plaintiff in this action, she brought an action on behalf of her daughter. As a mother and natural guardian of the infant plaintiff she submitted to a deposition and is the principle [sic] witness for the plaintiff. Moreover, Ms. Crespo's prenatal and birth records are subject to discovery.

Def. 12/05/00 Letter at 1–2. At oral argument, defense counsel equivocated as to whether Ms. Crespo is a party to this action, but nonetheless argued that she could be compelled to submit to an examination under Rule 35. Tr. at 37:8–21. Plaintiff fails to address this issue at all.

**11.** Rule 17(c) provides:

Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

Fed.R.Civ.P. 17(c).

**12.** Courts have observed that " '[t]here is little distinction between a next friend and a guardian ad litem. A guardian ad litem is a special guardian, appointed by the court to defend in behalf of an infant party. A next friend is one who, without being regularly appointed guardian, represents an infant plaintiff.' " *Eiges v. Comm'r of Internal Revenue,* 101 T.C. 61, 66–67, 1993 WL 271428 (Tax Ct.1993) (quoting *Till v. Hartford Accident & Indem. Co.,* 124 F.2d 405, 408 (10th Cir.1941)).

ty only; the action must be brought in the name of the real party in interest—the infant ...." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1570 (2d ed.1990).

█ Although few reported cases have examined the meaning of the term "party" under Rule 35, those that have addressed the question confronting this Court have almost uniformly held that a federal court lacks the authority under Rule 35(a) to order a parent, suing on behalf of an infant-plaintiff, to submit to an examination.

The specific question of whether a parent suing in a representative capacity is a "party" within the meaning of Rule 35 was comprehensively addressed by the Ninth Circuit in *Fong Sik Leung v. Dulles,* 226 F.2d 74 (9th Cir.1955). In *Fong,* the purported father of an infant-plaintiff filed suit as his son's guardian ad litem to establish that his son was an American citizen born in China to an American citizen. In response to a defense request, the district court ordered the infant-plaintiff's father to submit to a blood test pursuant to Rule 35. The father refused, and the district court dismissed the case on that basis. *See* 226 F.2d at 80. The Court of Appeals reversed, explaining:

> It seems clear that there were not two parties to this ... proceeding. The child petitioner is the only person seeking relief. The Guardian ad litem seeks none for himself. He is no more than the court's agent to aid the petitioner in seeking that relief. That here he is the child's claimed father is a mere happenstance....

*Id.* at 76.

The holding in *Fong* was reaffirmed by the Ninth Circuit in *Scharf v. United States,* 597 F.2d 1240, 1243 (9th Cir.1979) ("the court's authority to order a physical examination under rule 35 was limited to [the infant-plaintiff] and ... it [was] error to order blood tests of [her purported parents]. [The

purported father's] status as guardian ad litem does not alter that result.") (citations omitted). *See also Et Min Ng v. Brownell,* 258 F.2d 304, 308 n. 10 (9th Cir.1958) ("Such a [blood] test could not be required of appellant's claimed father, since he is not a party to the action."); *Dulles v. Quan Yoke Fong,* 237 F.2d 496, 498–99 (9th Cir.1956) (same). Courts in this circuit have come to similar conclusions in actions seeking declarations that the infant-plaintiffs were United States nationals. *See Chin Nee Deu v. Dulles,* 18 F.R.D. 350, 351 (S.D.N.Y.1955) ("Regardless of the gratuitous inclusion in the title of the complaint of the father Chin Nee Deu 'as father and next friend of Chin Ai Sun' as a plaintiff, neither he nor the mother ... is a party within the meaning of F.R.Civ.P. 35(a) subject to physical examination under that rule ....") (footnote omitted); *Yee Szet Foo v. Dulles,* 18 F.R.D. 237 (S.D.N.Y.1955) (denying defense motions under Rule 35(a) to compel parents and siblings of plaintiffs to submit to blood grouping tests).[13]

The legal principle applied in *Fong* and its progeny is consistent with the language and history of Rule 35 which, when first adopted in 1937, authorized only an examination "of a party." *See* Fed.R.Civ.P. 35 (1937) (*quoted in* 2 James Wm. Moore et al., *Moore's Federal Practice* § 35 (1st ed.1938)). In 1955, the Advisory Committee on Rules for Civil Procedure proposed expanding the scope of Rule 35 to cover "an agent or a person in the custody or under the legal control of a party." Advisory Committee on Rules for Civil Procedure, Report of Proposed Amendments, 41–43 (1955) (*quoted in Schlagenhauf,* 379 U.S. at 116 n. 12, 85 S.Ct. 234). However, the 1970 amendments to Rule 35 adopted only a portion of the proposal, extending coverage to "a person in the custody or under the legal control of a party," Fed. R.Civ.P. 35(a),[14] but not to "an agent of a party." *See Schlagenhauf,* 379 U.S. at 116 n. 12, 85 S.Ct. 234. Given the evolution of the

---

**13.** The Court's research has uncovered only one case in which a federal court ordered a parent suing on behalf of an infant plaintiff, over the parent's objection, to undergo a physical or mental examination under Rule 35. *See Valita M. v. City of Chicago,* No. 83 C 3745, 1986 WL 8736, at *3 (N.D.Ill. Aug. 1, 1986). While raising relevance and other objections, the parent apparent-

ly failed to argue that she was not a party within the meaning of Rule 35.

**14.** *Cf. Beach v. Beach,* 114 F.2d 479 (D.C.Cir. 1940) (cited in *Schlagenhauf,* 379 U.S. at 116 n. 12, 85 S.Ct. 234).

Rule, the Supreme Court suggested in *Schlagenhauf* that Rule 35 does not authorize compelled examinations of non-parties who merely are agents of parties. 379 U.S. at 116 n. 12, 85 S.Ct. 234 (although a corporate defendant's agent who was himself a party to the action fell within the scope of Rule 35, "[h]e is to be distinguished from one who is not a party but is, for example, merely the agent of a party."); *see Kropp v. Gen. Dynamics Corp.*, 202 F.Supp. 207, 208 (E.D.Mich.1962) (court lacked jurisdiction to compel truck driver, a non-party and agent of corporate defendant, to submit to physical examination under Rule 35(a)).

Here, Ms. Crespo is acting merely as the representative of her child, that is, as her child's agent. In other contexts, courts have distinguished between the rights and obligations of individuals suing on their own behalf and those suing in a representative capacity. Thus, a parent suing on behalf of his or her child does not have a right to proceed *pro se*.[15] By its terms, Rule 35 appears to contemplate the same distinction. This Court therefore declines to expand the scope of Rule 35 to include representatives and natural guardians of infant-plaintiffs, particularly where a proposal to expand the Rule to encompass "agents" was rejected.

■ Nor does the Court have "inherent authority," beyond Rule 35, to order a non-party to submit to a physical or psychological examination. *See Dechaine v. Warden*, No. 00–123–P–H, 2000 WL 1183165, at *18 (D.Me. July 28, 2000), *adopted in* No. 00–123–P–C (D.Me. Nov. 21, 2000) (Carter, J.). As the Court observed in *Fong:* "It would be absurd to contend that any one not a party may be so coerced while specifically providing in Rule 35(a) that only a party is subject to such physical examination." 226 F.2d at 77; *accord Dechaine*, 2000 WL 1183165, at *18 (citing *Scharf*, 597 F.2d at 1243–44; *Fong*, 226 F.2d at 76, 8A, Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2223 at 471 (2d ed.1994)). To rely on inherent judicial power to order an examination not authorized under Rule 35(a) would run afoul of the Supreme Court's decision in *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891); in *Botsford*, a case predating the adoption of Rule 35, the Supreme Court held that a federal court could not order the physical examination of a party in the absence of statutory authority to do so. *See Fong*, 226 F.2d at 76–78 (citing *Botsford* ). In short, "[c]laims of inherent power in the face of a rule with specific limitations are always dubious, and especially when it is clear that the federal courts had no power, inherent or otherwise, to order a physical or mental examination prior to the adoption of [Rule 35]." *Dechaine*, 2000 WL 1183165, at *18 (citation omitted, second set of brackets in original).[16]

---

**15.** The Second Circuit's reasoning is instructive: [B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him. For example, a lay person may not represent a corporation or a partnership or appear on behalf of his or her own minor child.
*Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (citing *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir.1997); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir.1990)).

**16.** Moreover, ordering a resistant parent or guardian to submit to psychological testing would pose a number of practical problems. First, since in this case defendants have asked that plaintiff be precluded from offering certain evidence if Ms. Crespo refuses to submit to testing, *see* Def. 12/5/00 Letter at 4, the Court would have to determine whether to appoint a guardian ad litem based on an apparent conflict of interest between plaintiff and Ms. Crespo. *See Ad Hoc Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist.*, 873 F.2d 25, 29–30 (2d Cir.1989) ("Federal courts ... have repeatedly affirmed a court's power to determine that the interests of a child or incompetent will be best represented by a 'next friend' or guardian ad litem and not by an authorized representative such as a parent or general guardian."). *See also Stahl v. Rhee*, 220 A.D.2d 39, 643 N.Y.S.2d 148, 152 (2d Dep't 1996), and N.Y. C.P.L.R. § 1201 (McKinney 2000) (New York law likewise permits court to remove parent as guardian of infant-plaintiff and appoint guardian ad litem if parent has interest adverse to that of infant). If the Court were to appoint a guardian ad litem in this case, Ms. Crespo unquestionably would not then be a party (or under the legal control of a party), and therefore could not be compelled to submit to an exam. *See Dechaine*, 2000 WL 1183165, at *18, *Fong*, 226 F.2d at 78.

In lieu of appointing a guardian ad litem, the Court could dismiss the case without prejudice to refiling by the infant-plaintiff when she becomes

■ For the foregoing reasons, the Court concludes that it lacks the power to order Ms. Crespo to submit to a psychological examination and/or IQ test.[17]

## B. *Siblings' Academic Records*

■ In diversity actions, the issue of privilege is governed by the substantive law of the forum state. *See Dixon v. 80 Pine St. Corp.; Appeal of Dep't of Bldgs, City of New York,* 516 F.2d 1278, 1280 (2d Cir.1975); *accord In re American Tobacco Co.,* 880 F.2d 1520, 1527 (2d Cir.1989). Under New York law, medical records relating to non-party siblings are privileged and not discoverable. *See* N.Y. C.P.L.R. § 4504 (McKinney 2000); *Koump,* 25 N.Y.2d at 294, 303 N.Y.S.2d 858, 250 N.E.2d 857. However, as plaintiff concedes, non-party siblings' academic records are not necessarily privileged. *See* Pl.

12/13/0000 Letter at 7 (citing *Wepy v. Shen,* 175 A.D.2d 124, 571 N.Y.S.2d 817 (2d Dep't 1991)). Rather, this Court must resolve essentially the same issue addressed by New York State courts: are the academic records sought material and reasonably likely to lead to evidence related to plaintiff's cause of action? *See* Fed.R.Civ.P. 26, 34; N.Y. C.P.L.R. § 3101 (McKinney 2000); *see also Allen v. Crowell–Collier Publ'g Co.,* 21 N.Y.2d 403, 407, 288 N.Y.S.2d 449, 235 N.E.2d 430 (1968) (interpreting N.Y. C.P.L.R. § 3101 in accordance with Fed. R.Civ.P. 26).

■ Whatever their admissibility at trial, *see, e.g., Monica W. v. Milevoi,* 252 A.D.2d 260, 262–64, 685 N.Y.S.2d 231 (1st Dep't 1999) (non-party siblings' academic records neither relevant nor discoverable in lead

an adult. *See Schempp v. Reniker,* 809 F.2d 541, 542 (8th Cir.1987) (affirming dismissal of case without prejudice where mother refused to produce infant-plaintiff for court-ordered physical exam, noting that child could refile upon becoming *sui juris* and no longer a minor). Under New York law, the statute of limitations for Almantina's cause of action would be tolled and the emancipated minor would have the capacity to sue in this Court under Rule 17(b). *See Henry v. City of New York,* 94 N.Y.2d 275, 281, 702 N.Y.S.2d 580, 724 N.E.2d 372 (1999) ("it could not be justly held that rights accorded by the law to infants are forfeited because a parent did not perform for an infant where performance was excused because of the infancy.") (citation, internal quotation marks, and ellipses omitted). If Almantina refiled upon attaining majority, her mother would be neither a party nor her representative and thus would clearly be beyond the reach of Rule 35. *See Fong,* 226 F.2d at 76.

17. Even if this Court had the power to order Ms. Crespo to submit to IQ testing, it would decline to do so, as defendants have failed to make a sufficient showing to warrant such judicial compulsion. A federal court may not order a party to undergo a physical or mental examination upon a showing of "mere relevance." *Schlagenhauf,* 379 U.S. at 118, 85 S.Ct. 234. Rule 35 requires that a movant demonstrate that a party's physical or mental condition is "in controversy" *and* that there is "good cause" for the examination. *Id.; Winters v. Travia,* 495 F.2d 839, 841 (2d Cir.1974) ("in controversy" and "good cause" requirements "are not mere formalities."); *Koump v. Smith,* 25 N.Y.2d 287, 296–300, 303 N.Y.S.2d 858, 250 N.E.2d 857 (1969) (contrasting Rule 35 and New York law).

Defendants ignore this heightened standard and instead rely on New York law, which, in contrast to Rule 35, gives courts very broad

discretion to order physical and mental examinations in order to obtain relevant material. *See Andon,* 94 N.Y.2d at 746, 747, 709 N.Y.S.2d 873, 731 N.E.2d 589 (affirming denial of parental IQ testing under N.Y. C.P.L.R. § 3101 after lower court "evaluated competing interests," with "due regard for the strong policy supporting open disclosure...."); *Kavanagh v. Ogden Allied Maint. Corp.,* 92 N.Y.2d 952, 953–54, 683 N.Y.S.2d 156, 705 N.E.2d 1197 (1998). Nevertheless, New York courts are divided as to whether parental IQ is even *relevant* in lead paint cases. *See Nieves v. 1845 7th Ave. Realty Assocs., L.P.,* 184 Misc.2d 639, 710 N.Y.S.2d 782, 785–86 (Sup.Ct.2000) (collecting cases).

Whatever the relevance of Ms. Crespo's IQ, given the availability of other evidence regarding the academic performance of Ms. Crespo and other family members (*see* Def. 12/5/00 Letter at 2), it cannot be said that defendants have established the requisite "good cause" to warrant an order under Rule 35 compelling her to submit to psychological testing. *See Mohamed v. Marriott Int'l. Inc.,* No. 94 Civ. 2336(RWS), 1996 WL 103838, at *4 (S.D.N.Y. Mar. 8, 1996) ("Among the factors looked to by courts to determine the existence of good cause are the availability of the desired information from other sources and its necessity to determine important factual issues in the case.") (citations omitted); *Marroni v. Matey,* 82 F.R.D. 371, 372 (E.D.Pa.1979) ("Plaintiffs have made no showing that the information they seek cannot be obtained by other discovery techniques. Until other methods are attempted, we believe that the 'discriminating application' of Rule 35 demanded by the Court requires us to deny the motion."); *see also Schlagenhauf,* 379 U.S. at 118, 85 S.Ct. 234.

paint litigation); *Nieves*, 710 N.Y.S.2d at 786 (same), the possibility remains that the academic records of the non-party siblings might lead to evidence related to plaintiff's cause of action. Given the record in this case, the most appropriate way to proceed is to examine the records *in camera* to determine their probative value and to determine if they contain any privileged medical information. *Cf. Anderson*, 680 N.Y.S.2d at 589 (ordering *in camera* inspection of non-party siblings' academic records). Therefore, Ms. Crespo shall promptly produce the demanded records for an *in camera* inspection, along with any English translations that may have been prepared.

### CONCLUSION

For the foregoing reasons, the Court rules as follows:

(1) Defendants' motion for an order compelling Ms. Crespo to submit to psychological testing is denied.

(2) Ms. Crespo shall immediately demand, from the appropriate school authorities, the academic records pertaining to those of plaintiff's siblings who remain in her legal custody,[18] and shall, within two business days of the receipt of such records, produce them to the Court for *in camera* inspection.

The Clerk of the Court is directed to transmit copies of this Memorandum and Order by overnight courier to all counsel of record.

**SO ORDERED.**

---

**18.** The Court has not been apprised of the time period encompassed by defendants' demand and assumes that the parties will confer in good faith to resolve any issue as to its scope.