# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 6, 2009 Session

## DEBORAH MILLER GENTILE v. MICHAEL CHARLES GENTILE

**Appeal from the Chancery Court for Williamson County**
**No. 32768      Jeffrey S. Bivins, Judge**

---

**No. M2008-02685-COA-R3-CV - Filed July 19, 2010**

---

Husband appeals the trial court's order under Rule 35 requiring the parties in this divorce action to undergo a mental examination and the court's alleged reliance on that examination. He also appeals the trial court's finding that the home titled solely to husband had transmuted to marital property.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Deana Hood, Franklin, Tennessee; Connie Reguli, Brentwood, Tennessee, for the appellant, Michael Charles Gentile.

Dana McLendon, Franklin, Tennessee, for the appellee, Deborah Miller Gentile.

## OPINION

In this divorce action, Michael Charles Gentile appeals the trial court's decisions resulting in Deborah Miller Gentile's designation as their child's primary residential parent and the trial court's designation of the couple's home as marital property.

The parties married in September of 2004, and their only child was born in February of 2005.  Both parties were in their forties at the time of their marriage.  Ms. Gentile had been previously married and had three grown children.  This was Mr. Gentile's first marriage.

After approximately two years of marriage, Ms. Gentile filed for divorce in August of 2006. A hearing was held in June of 2008 for the trial court to determine the residential parenting schedule for the parties' three-year old daughter and to decide whether the couple's residence was separate or marital property.

In its September 11, 2008 order, the trial court made Ms. Gentile the primary residential parent for the couple's child and gave her decision-making authority related to the child's education, religion, extracurricular activities and non-emergency health care. Mr. Gentile was granted visitation every other weekend and three weeks in the summer. As for the marital home, the trial court found that although titled to Mr. Gentile, it had transmuted to marital property. Mr. Gentile was awarded amounts representing his contribution to the purchase of the home.

## I. CHALLENGE TO PARENTING ARRANGEMENT

According to Mr. Gentile, the trial court made several errors related to its determination of the parenting arrangement. First, Mr. Gentile claims the trial court erred by ordering a "forensic parenting evaluation" pursuant to Tenn. R. Civ. P. 35. Second, Mr. Gentile argues the trial court erred by placing more confidence in the testimony of the forensic psychologist and Ms. Gentile's expert than in the testimony of Mr. Gentile's expert. Third, he argues that the trial court abused its discretion in naming Ms. Gentile the primary residential parent. We will discuss each alleged error in turn.

### A. Forensic Evaluation

Mr. Gentile argues the trial court erred in ordering that both parties undergo a forensic parenting evaluation. Rule 35.01 provides as follows:

When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

The rule itself contains two prerequisites before a trial court is authorized to order a mental examination of the parties. Rule 35.01 requires the moving party to establish: (1) that a party's mental or physical condition is at issue and (2) that good cause for the examination exists. *Overstreet v. TRW Commercial Steering Division*, 256 S.W.3d 626, 638 (Tenn. 2008). Once these two conditions have been shown to exist, then it is within the trial court's discretion to order a Rule 35 examination. *Overstreet*, 256 S.W.3d at 638.

It was Ms. Gentile who moved the court to order that both parties undergo a mental evaluation under Rule 35. In its December 18, 2007 order requiring both parties to undergo a forensic parenting evaluation by Dr. William Bernet,[1] the trial court found their mental or psychological condition was "manifestly at issue" since one factor to consider in deciding the parenting arrangement under Tenn. Code Ann. § 36-6-106 (5) is the mental health of the parents. The court found that a report from Dr. Bernet "could substantially assist the Court" in making decisions about the parenting arrangement.[2]

We decline to reverse the order requiring the parties to undergo a mental examination for two reasons. First, by agreed order dated June 5, 2008, the parties stipulated that Dr. Bernet and Dr. Walker were experts in their field and that their forensic parenting evaluations was admissible. With regard to admissibility, the Agreed Order provides as follows:

> The *Forensic Parenting Time Evaluation* submitted by Drs. Bernet and Walker is admissible into evidence in this case. The data and documents relied upon by Drs. Bernet and Walker are admissible for the purposes for which they were submitted in connection with the report.

As a result, Mr. Gentile waived any objection he may have had to the evaluation.[3]

---

[1] Dr. Bernet was assisted by Dr. Walker.

[2] It should be noted that the trial court later found in its order setting the parenting arrangement that the mental and physical health facts favored both parents as "both parents appear to the court to be healthy."

[3] Mr. Gentile also argues on appeal that the trial court failed to observe Rule 35.01 by failing to specify the time, place, manner, conditions and scope of the evaluation. Any objection was clearly waived by Mr. Gentile by the parties' Agreed Order. Mr. Gentile also objects to the resulting expert's report since it contained a recommendation component. First, the parties agreed it was admissible. Second, the trial court was not in any way bound to accept the recommendation and was free to disregard it.

Second, even absent waiver, we believe that the requirements of Rule 35 had been met and that the trial court was within its discretion to order the evaluation. Mr. Gentile argues that just because Tenn. Code Ann. § 36-6-106 (5) makes the parents' mental condition a factor in arriving at a parental arrangement, it is required that these parties' mental condition be *at issue* and not simply one of several factors to evaluate.

In *Odom v. Odom*, M1999-02811-COA-R3-CV 2001 WL 1543476, at * 6 (Tenn. Ct. App. Dec. 5, 2001) (no Tenn. R. App. P. 11 application filed), this court found:

> We turn first to Tenn. R. Civ. P. 35's in controversy" requirement. A party's physical or mental condition may be placed "in controversy" in two ways. First, the party himself or herself may place his or her condition in controversy. Second, a party may place another party's physical or mental condition "in controversy" even if the party him or herself has not. The latter circumstance calls for a discriminating application of Tenn. R. Civ. P. 35's requirements. *Schlagenhauf v. Holder*, 379 U.S. at 118-19, 85 S. Ct. at 243; *Federal Practice and Procedure* § 2234.1, at 480.

> The "good cause" requirement in Tenn. R. Civ. P. 35 places the burden on the moving party to demonstrate that the requested examination is needed. It requires the court to consider whether the information sought is available through other discovery techniques and whether the available information is adequate. *Caban ex rel. Crespo v. 600 E. 21st St. Co.*, 200 F.R.D. 176, 182 (E.D.N.Y.2001); *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 196, 200 (N.D.Tex.1995); *Marroni v. Matey*, 82 F.R.D. 371, 372 (E.D.Pa.1979); *Ex Parte Wal Mart Stores, Inc.*, 729 So.2d 294, 298 (Ala.1999). Thus, requests for examinations under Tenn. R. Civ. P. 35 should be considered in the context of the other discovery in the case.

*Id*. at *6.

As the court in *Odom* noted, since the mental condition of parents is not "necessarily in controversy" in every custody case, "we must analyze the parties' claims and defenses, as well as the facts brought to the trial court's attention that might support a conclusion that the mental condition of these particular parties and these particular children were 'in controversy.'" *Id*. at *7.

In March of 2007, the parties entered into an Agreed Order that neither party would "threaten or harass" the other. The record contains correspondence between the parties concerning the exchange of the parties' minor daughter referencing Mr. Gentile's "repeated

displays of hostility and rage toward Ms. Gentile." Mr. Gentile admits using obscenities towards his wife at a visitation exchange. The record shows the parties were recording and videotaping exchanges. Various accusations were made. While the foregoing does not constitute proof of the matters alleged, the fact of the types of allegations and undisputed behavior by the parties certainly would lead the court to conclude that the mental, or psychological, condition of the parties was in controversy.

## B. Trial Court's Finding of Credibility

Mr. Gentile next appeals the trial court's finding about credibility and weight afforded the expert witness testimony. The trial court found as follows:

> The Court has also considered the evidence offered by the parties from Drs. Bernet, Walker and Frye. The Court finds that the evidence submitted by Drs. Walker and Bernet is more accurate and more credible than that of Dr. Frye. The Court has, therefore, placed greater weight upon the report submitted from Drs. Bernet and Walker.

Dr. Bernet and Dr. Walker performed the evaluation ordered by the court. Mr. Gentile offered the testimony of Dr. Frye, who had admittedly not met with either of the parties or their child.

On appeal, Mr. Gentile recounts some of Dr. Frye's testimony, cites one point of Dr. Bernet that he argues was exaggerated and argues that Drs. Bernet and Walker failed to provide required narratives. Unlike Dr. Bernet, however, Dr. Frye did not meet or interview Ms. Gentile or the child or see the three of them interact before testifying. When asked whether she agreed that Drs. Bernet and Walker had the "advantage of personally interacting" with Mr. Gentile, Ms. Gentile and the child and that she did not, Dr. Frye responded "absolutely." Dr. Frye further testified that such personal interaction would be an important factor in forming an opinion about the forensic parenting evaluation. The weight, faith, and credit to be given to any witness' testimony lies, in the first instance, with the trier of fact, and the credibility accorded will be given great weight by the appellate court, *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). *See also Larsen-Ball v. Ball*, 301 S.W.3d 228, 235 (Tenn.2010) ("When issues of credibility and weight of testimony are involved, we afford considerable deference to the trial court's findings of fact.") We find no error in the trial court's evaluation of the expert testimony.

### C. Naming of Primary Residential Parent

Mr. Gentile argues the trial court erred by relying on a finding that Mr. Gentile was in criminal contempt for harassing Ms. Gentile. He further argues that the proof did not support the trial court's finding that Ms. Gentile was more likely to facilitate and encourage Mr. Gentile's relationship with their daughter. Due to these errors, Mr. Gentile alleges, the court's decision to make Ms. Gentile the primary residential parent is erroneous.

The trial court considered that "on a number of occasions, Mr. Gentile demonstrated anger, hate and disdain for Ms. Gentile in the presence of the child." This was evidenced, as noted by the court, by Mr. Gentile's own video recording.

Mr. Gentile is correct that his contempt finding was reversed on appeal, *Gentile v. Gentile*, 2009 WL 1025832 (Tenn. Ct. App. Apr. 14, 2009). The trial court, however, did not say it was relying on any contempt findings but, instead, on video evidence submitted by Mr. Gentile that demonstrated "just how hateful and hostile Mr. Gentile is towards Ms. Gentile." As a consequence, since the finding of contempt was not relied upon, its reversal does not undermine the trial court's decision.

Mr. Gentile also argues that the trial court erred when it found that Ms. Gentile would be more likely to facilitate the child's relationship with the other parent, a factor listed in Tenn. Code Ann. § 36-6-106(10). Mr. Gentile relies upon his suggestion that if he were the primary residential parent, then he would have the child spend considerable time with her mother. However, the overall evidence supports the trial courts' conclusion that the child is more likely to have a relationship with both parents if Ms. Gentile is the primary residential parent.

The trial court's order discusses each of the factors in Tenn. Code Ann. § 36-6-106 regarding which parent should be the primary residential parent. After considering and weighing these factors, the trial court made its decision. That decision is supported by a preponderance of the evidence. Accordingly, the trial court's decision naming Ms. Gentile the primary residential parent is affirmed.

## II. TRANSMUTATION OF THE MARITAL HOME INTO MARITAL PROPERTY

There is no dispute that Mr. Gentile bought the marital home from his wife before they were married and titled it in his name alone. According to Mr. Gentile, the trial court erred when it found that Mr. Gentile's separate property transmuted into marital property.

The statutes governing divorce, Tenn. Code Ann. § 36-4-101 *et seq.*, direct the courts to divide the marital property equitably "without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121. Marital property includes all types of property acquired in the course of the marriage. Tenn. Code Ann. § 36-4-121(b)(1)(A). However, a spouse's separate property is not subject to division by statute. *Barnhill v., Barnhill*, 826 S.W.2d 443, 451 (Tenn. Ct. App. 1991). A spouse's separate property includes "[a]ll real and personal property owned by a spouse before marriage." Tenn. Code Ann. § 36-4-121(b)(2)(A).

The courts of Tennessee have recognized two possible methods whereby property that is separately owned can be converted into marital property for the purpose of equitable division in divorce cases. The method relevant herein is transmutation, which takes place when the parties treat separate property in such a way as to reflect an intention that it become marital property. *Langschmidt v. Langschmidt,* 81 S.W.3d 741, 747 (Tenn. 2002). Transmutation may occur, for example, when the separate property of one spouse is used to purchase other property, which is then placed in the name of both spouses. *Barnhill v. Barnhill*, 826 S.W.2d at 451. However, "[i]n the final analysis, the status of property depends not on the state of its record title, but on the conduct of the parties." *Cohen v. Cohen*, 937 S.W.2d 823, 832 n. 12 (Tenn. 1996) (quoting *Mondelli v. Howard*, 780 S.W.2d 769, 774 (Tenn. Ct. App. 1989)). Whether title has been conveyed to the non-owner spouse is not determinative of whether the property is marital. *Cohen*, 937 S.W.2d at 832 n. 12.

Furthermore, whether an asset is separate property or marital property is a question of fact. *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). The trial court's findings of fact are reviewed *de novo* with a presumption of corrections unless the evidence preponderates otherwise. *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); Tenn. R. App. P. 13(d).

The trial court found that Ms. Gentile had owned the home at issue before it was bought by Mr. Gentile prior to their marriage. The trial court referred to the transactions as a purchase or refinance. Before their marriage, Mr. Gentile loaned his future wife $13,795 which was applied to the outstanding mortgage on the house, and he paid $26,343 when he purchased it. Both parties earned income during the marriage. The trial court found, as a matter of fact, and it is undisputed, that the mortgage and many household expenses were paid from Ms. Gentile's bank account or a joint bank account. The parties lived in the home during their marriage. During the marriage, the parties commingled funds in the maintenance and upkeep of the property. Mr. Gentile argues, however, that he provided the money that went into Ms. Gentile's account.

Finding the property became marital property, it was conditionally awarded to Ms. Gentile if the home was refinanced to relieve Mr. Gentile of liability on the mortgage and Ms. Gentile paid Mr Gentile $40,138 (representing reimbursement for his contributions toward the house's purchase).

Mr. Gentile seems to argue that the court should not rely on evidence in violation of the parole evidence rule to contradict the warranty deed placing title in Mr. Gentile. His reliance on the parole evidence rule is misplaced. The court does not rely on testimony about what the parties said or intended prior to or at the time of the conveyance. *Mitchell v. Chance*, 149 S.W.3d 40, 44 (Tenn. Ct. App. 2004). Instead, the trial court found that over time it transmuted into marital property. Given the circumstances described above, we cannot find that the trial court erred by finding that the home was marital property and awarding Mr. Gentile his contributions toward its purchase.

### III. COSTS AND FEES

With regard to expert witness fees and attorney's fees, the trial court made the following finding challenged by Mr. Gentile on appeal:

> The Court has been requested by both parties to award attorney's fees and other costs in this action. The Court recognizes that important factors in making this decision are the need for the award and the ability of the other party to pay any such award. The Court notes that this case has been very acrimonious, and that numerous issues were brought to the Court over time that simply did not need to be submitted to the Court for resolution. Considering the genesis of those unnecessary actions, and the need of Mrs. Gentile for an award and the ability of Mr. Gentile to pay the award, the Court orders that Mr. Gentile shall pay to Mrs. Gentile $5,000 for her attorney's fees in this matter, and further to reimburse her $8,270.00 for the expert witness fees that she has paid in this case, for a total amount of $13,270.00.

As to the expert fees, such are discretionary costs under Rule 54.04 of the Tennessee Rules of Civil Procedure. Mr. Gentile appeals the award of expert fees on the sole ground that Ms. Gentile did not file a motion requesting such fees within 30 days after entry of judgment in accordance with Rule 54.04. The award of these costs was included within the judgment itself after the court noted both parties had requested award of cost and fees. Mr. Gentile does not object to the award of expert fees on any other ground such as failure to meet the requirements of Rule 54.04. Mr. Gentile does not argue the court erroneously found both parties requested such fees, that he was without notice such fees were requested, or that the proof did not support the award. Consequently, the award of expert fees is affirmed.

With regard to attorneys' fees, Mr. Gentile argues that an award to Ms. Gentile of attorneys' fees based on her need and Mr. Gentile's ability to pay was an abuse of discretion. First, it should be noted that the trial court noted "numerous" matters that should not have been before the court. Upon examination of the record in this matter, we are unable to conclude that the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice" to rise to the level of an abuse of discretion with regard to either the expert or attorneys' fees. *State v. Stevens*, 78 S.W.3d 817, 832 (Tenn. 2002).

The trial court is affirmed. Costs of appeal are assessed against Michael Charles Gentile for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE